**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1743-16T2

GREGORY VISCONTI,

    Plaintiff-Appellant,

v.

LISA VISCONTI,

    Defendant-Respondent.

_____

        Argued January 15, 2019 – Decided April 4, 2019

        Before Judges Rothstadt and Natali.

        On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0005-12.

        Vincent P. Celli argued the cause for appellant (Celli, Schlossberg, De Meo & Giusti, PC, attorneys; Vincent P. Celli, on the brief).

        Respondent has not filed a brief.

PER CURIAM

Plaintiff Gregory Visconti appeals from two November 18, 2016 Family Part orders that denied modification of his alimony and child support obligations prior to August 2015 pursuant to the parties' Property Settlement Agreement (PSA), but modified his alimony obligation effective August 1, 2015, and referred "[a]ll other items of relief" to a post-judgment early settlement panel. On appeal, plaintiff argues that the court did not satisfy its obligation under Rule 1:7-4 because it failed to set forth adequate findings of fact or conclusions of law. We affirm in part, vacate in part, and remand.

I.

On July 9, 2007, the court entered a Final Judgment of Divorce (JOD), which dissolved plaintiff and defendant Lisa Visconti's marriage of twenty-two years and incorporated their PSA. Under Article Two of the PSA, entitled "Alimony/Maintenance," the parties agreed that "they enjoyed a middle class lifestyle predicated upon the income of [plaintiff] during the marriage." Article Two further provided that in light of the parties' respective needs and expenses, abilities to earn income, ages and health, and assets "including the distribution of equity as set forth" in the PSA, "the support payable to [defendant] shall provide both parties with the ability to substantially maintain the current lifestyle."

Plaintiff agreed to pay defendant $4000 per month in permanent alimony, based on plaintiff's "gross annual income," which "varie[d] from year to year" between "$110,000 . . . and $160,000," and defendant's "capacity to earn income of approximately $15,000 . . . per year."  The parties further agreed plaintiff's alimony payments would terminate upon the death of either party, defendant's remarriage, or defendant's cohabitation with an unrelated person for a period of thirty days or more.

In addition, plaintiff reserved the right to move for modification or termination of alimony in anticipation of, or upon, his retirement.  Article Two also provided that plaintiff's alimony obligation was subject to modification or termination "upon a change in financial circumstances of either party," but that "[a]limony shall not be amended by offset or modification until after August 1, 2015 . . . ."

In Article Three, entitled "Equitable Distribution," the parties agreed that "[i]n exchange for the other equities" in the PSA, defendant would be "the sole and exclusive owner" of the marital home, which had an estimated market value of $860,000, and that she would "be free to transfer or sell this property at any time she deems appropriate."  The parties further agreed that plaintiff would remain "the sole and exclusive" owner of certain investment property, which

also had a market value of $860,000.  At the time, mortgages encumbered both properties.

Article Six required plaintiff to pay defendant $850 per month, per child, in child support for the parties' two youngest children.[1]  Although child support would terminate upon emancipation, plaintiff agreed to extend child support for the two youngest children until August 15, 2015, and further agreed that he would "not seek a modification of child support provided for herein."  Article Six required plaintiff to pay all college expenses, "including tuition, books, [and] fees" for all three children.

Four years after the divorce, defendant sold the marital property and moved from New Jersey to Florida.  Six months later, on January 5, 2012, plaintiff filed a motion seeking fifteen prayers for relief, including modification of his child support and alimony obligations, claiming defendant's move to Florida and a "drastic decline in his annual income" were substantial changes in circumstances that warranted modification of the PSA.

---

[1]  The parties' third, eldest child was twenty-years old at the time of the divorce, and the parties agreed plaintiff would not pay child support for that child as plaintiff was "exclusively funding th[at] child's college costs, her automobile, [and] her living expenses."

A-1743-16T2

On April 25, 2012, the court heard plaintiff's motion and defendant's cross-motions to enforce litigant's rights, and to appoint a forensic accountant to review plaintiff's financial records. The judge found both defendant's relocation to Florida and "plaintiff's loss of business or financial position" were "a substantial change of circumstance." However, the court denied plaintiff's applications to modify his alimony and child support obligations at that time, but did so "without prejudice" and "subject to discovery and economic mediation and potentially a plenary hearing if it's not resolved." The court also stated it would grant "a period of discovery pending a plenary hearing to determine if there has been a substantial permanent change in circumstances."

To memorialize its oral decisions, the court entered two orders on April 25, 2012, which: deemed defendant's move to Florida and plaintiff's loss of business to be substantial changes of circumstances; ordered plaintiff to advance "an initial $10,000.00 retainer" to defendant's counsel "for [d]efendant's counsel fees and costs of representation for the discovery process and plenary hearing"; "adjudicated [plaintiff] to be in violation of litigant's rights for his failure to pay" several items required by the PSA; and denied defendant's remaining prayer's for relief without prejudice.

A-1743-16T2

There was no further motion practice until November 7, 2013, when defendant filed another motion to enforce plaintiff's support obligations, asserting he was in arrears of $38,000 in alimony and $29,000 in child support. Plaintiff opposed the motion and claimed his "primary source of income ha[d] been destroyed by insurance companies and Obamacare" and his "office was destroyed in Hurricane Sandy."

Four months later, after hearing oral arguments on the November 7, 2013 motions, the same motion judge who issued the earlier orders entered an order on March 21, 2014, which appointed a forensic expert to evaluate plaintiff's financial status and compelled plaintiff to provide defendant with outstanding discovery. The court also granted defendant's numerous requests seeking enforcement of plaintiff's support obligations, but ordered them "held in abeyance pending the [forensic] evaluation as anticipated."[2]

---

[2] In a statement of reasons accompanying the March 21, 2014 order, the court attributed the delay in proceedings following the April 25, 2012 orders to plaintiff being "lackadaisical . . . and/or careless[ ] in attending to his legal matters" based on the amount of time that elapsed between the entry of the April 25, 2012 orders and when plaintiff alleged his office was destroyed by "the Sandy Storm (October 31, 2012)!" (emphasis in original).

A-1743-16T2

The court-appointed forensic expert submitted his report on November 20, 2015, which was based on plaintiff's tax returns from 2007 to 2014 and other financial documents. The expert found plaintiff's annual "adjusted income/cash flow" averaged approximately $113,872.63 between 2007 and 2014.[3]

Five months later, on April 15, 2016, plaintiff filed a motion to compel defendant's father and the executor of defendant's grandmother's will, to testify regarding defendant's interests under the will. Defendant opposed the motion and filed a cross-motion on April 26, 2016, seeking to increase plaintiff's alimony obligation and enforce litigant's rights by requiring plaintiff to make numerous reimbursements, including arrears for alimony, child support, and defendant's health insurance payments. Defendant also argued that plaintiff did not reveal all of his sources of income to the forensic expert. Plaintiff opposed defendant's application on May 6, 2016, and certified that his income was accurately represented by the forensic expert and that he provided the forensic expert with all relevant information.

---

[3] Specifically, the forensic expert's report provides that plaintiff's "[t]otal adjusted [i]ncome before taxes from all sources" was $99,829 in 2007; $140,095 in 2008; $108,114 in 2009; $114,119 in 2010; $86,313 in 2011; 117,827 in 2012; $118,057 in 2013; and $126,627 in 2014.

After hearing the parties' pro se oral arguments on August 8, 2016, a second motion judge found under "the terms of the PSA," the "deal was[,] through August of 2015, the alimony would be $4,000 a month," and "[t]here is no ambiguity in that provision." With respect to child support, the judge informed the parties that additional documents were necessary for the court to decide whether child support needed to be "balance[d] off at all with" the college expenses that plaintiff paid for each child. The court entered an order on the same date, which required the parties to submit the additional materials by August 15, 2016, and stated that upon receipt of those documents, the court would issue a supplemental order addressing the parties' requests for relief.

After receiving the additional materials, the court issued two orders and a statement of reasons on November 18, 2016, which: denied plaintiff's application to modify child support prior to August 15, 2015; modified plaintiff's alimony obligations effective August 1, 2015; denied plaintiff's request to compel defendant's father to testify regarding defendant's interest in her grandmother's will and trust; and referred all other items of relief to a post-judgment matrimonial early settlement panel.

A-1743-16T2

With respect to plaintiff's child support obligation, the court found the PSA's "clear and unambiguous" language in Article Six[4] "equates to an anti-Lepis[5] clause in this particular area." Accordingly, the court denied plaintiff's request for a modification of child support prior to August 15, 2015.

Similarly, as to plaintiff's alimony obligation, the court found "the agreement between the parties is clear" and "[t]he parties agreed to a permanent alimony award . . . of $4,000.00/month based on the [p]laintiff having gross income that varied from $110,000.00 to $160,000.00 [per] year." After quoting the provision in the PSA that states "alimony shall not be amended by offset or modification until after August 1, 2015," the court concluded "a clear and simple reading of this provision is that alimony would not be amended by offset or modification until August 1, 2015." Therefore, the court "focused" its analysis "on the period of time leading up to and subsequent to that date."

In its pre-August 2015 analysis, the court noted the forensic expert "averaged the [p]laintiff's adjusted gross income at $113,872.00," which the court found "actually placed the [p]laintiff within the very range of income as

---

[4] In its November 18, 2016 statement of reasons, the court mistakenly referred to Article Six of the PSA as Article Seven.

[5] Lepis v. Lepis, 83 N.J. 139 (1980).

contemplated in the [PSA]." The court again referenced "the clear language of the [PSA]," and stated that, "as noted, the [c]ourt's analysis is focused on whether or not post August 1, 2015, it would be appropriate and equitable to modify the [p]laintiff's alimony obligation."

In its post-August 1, 2015 analysis, the court determined that "[w]hile the [p]laintiff's income is still within the range . . . contemplated in the [PSA], the average income over a several year period is right at the low [end] of that income range." Accordingly, the court "fe[lt]" it was "necessary from an equitable standpoint to adjust the alimony obligation" as "[f]airness dictates recognizing a relative decrease in [plaintiff's] yearly adjusted gross income," specifically "a twenty-nine percent (29%) decrease in income from $160,000.00 to $113,872.00."

The court then assessed defendant's financial circumstances and found defendant was "somewhat less than forthcoming in terms of all current income that she may be or could receive." Specifically, the court noted that it "ha[d] some questions regarding . . . various costs and expenses that are listed in the [d]efendant's mish mosh of papers submitted, which includes spending $1,520.00 for a couch for one of the children, spending $1,400.00 at Target, and getting Brooks Brothers suits." The court found "[t]hese numbers suggest an

individual who is making somewhat more than the $15,000.00 that was imputed to her." Therefore, the court concluded it was "appropriate at this time to impute the [d]efendant [income] at the number suggested by the [p]laintiff, which is $25,000.00/year." By applying "the formula utilized by the parties when they reached their initial [a]greement" to "[p]laintiff's wages at the $113,872.00/year number" and defendant's newly imputed annual income of $25,000, the court modified plaintiff's alimony obligations to $2468.67 per month "effective as of August 1, 2015."[6] This appeal followed.

While this appeal was pending, defendant filed an additional application with the trial court that set forth 138 prayers for relief. Plaintiff filed opposition papers and a cross-motion. In a March 2, 2018 order and accompanying statement of reasons, the court denied all of the parties' requests for relief and amplified its November 18, 2016 statement of reasons.

In its March 2, 2018 statement of reasons, the court explained that it had found the PSA contained "enforceable anti-Lepis provisions" with respect to child support and alimony. Specifically, the court found the provision

---

[6] Although not explained in the November 18, 2016 statement of reasons, or in the March 2, 2018 statement of reasons discussed infra at pp. 11-12, it appears the court arrived at this figure by subtracting $25,000 from $113,872, resulting in an amount of $88,872, dividing that sum by three to equal $29,624, and further dividing that amount by twelve to reach $2468.67.

prohibiting modification of alimony "until after August 1, 2015," and the provisions in which plaintiff "agreed to extend child support for [the parties' two youngest children] until August 1, 2015," and to "not seek a modification of child support," were enforceable under the circumstances. The court stated:

> Again, [al]though [the November 18, 2016] Statement of Reasons could have provided more detail, the [c]ourt relied on the forensic accounting expert's report and the prolonged delay in the case to determine that enforcement would be fair and equitable under the circumstances. The [c]ourt believes that [p]laintiff had the ability and the obligation to maintain the alimony and child support obligations, as he agreed to, through August 1, 2015. The forensic accounting expert's report indicated that [p]laintiff's average annual wages were $113,872, and the PSA states, "[t]he parties agree at the time of this Agreement, [plaintiff's] income varies from year to year with a gross annual income between $110,000 dollars and $160,000 dollars." Further, the [c]ourt believes that [d]efendant had a continued need for the alimony and child support. The parties agreed in the PSA that [d]efendant was capable of earning only $15,000 per year, and no concrete evidence was ever presented to the [c]ourt that [d]efendant earned significantly above that salary.

The second motion judge filed its March 2, 2018 order and statement of reasons with this court on May 23, 2018, "pursuant to Rule 2:5-1(b) to be considered as the [c]ourt's discretion may allow."

12

On appeal, plaintiff maintains the court failed to comply with Rule 1:7-4 by "not adequately set[ting] forth its findings of fact or conclusions of law" in deciding not to modify his alimony obligations prior to August 1, 2015. Specifically, plaintiff contends the court "did not appreciate the tension between conflicting Lepis vs. anti-Lepis language caused by handwritten changes to the text" of Article Two of the PSA. Further, plaintiff asserts that under Morris v. Morris, 263 N.J. Super. 237 (App. Div. 1993), "the important issue" to consider when assessing whether a PSA contains an enforceable anti-Lepis provision is what "trade-offs" the parties made between alimony and equitable distribution as consideration for that provision. According to plaintiff, because there was "no such discussion or consideration" of the trade-offs, "or, more importantly, [of] the intent of the parties respecting that key provision," the court failed to comply with Rule 1:7-4.

In addition, plaintiff argues that, "even assuming there had been a determination of the standard of living during the marriage to which the parties' current standard of livings could be compared," the "findings of fact as were made do not adequately inform the parties or this Court about the incomes of the parties to" support themselves. Plaintiff also contends the court "failed to

discuss" the September 2014 statutory amendments to N.J.S.A. 2A:34–23(b). Finally, plaintiff claims the second judge committed an abused of discretion by failing to hold a plenary hearing in accordance with the first judge's finding of a substantial change in circumstances, and requests a remand for the court to conduct a plenary hearing.[7]

III.

In reviewing a Family Part judge's motion order, we defer to "factual findings 'supported by adequate, substantial, credible evidence' in the record." Landers v. Landers, 444 N.J. Super. 315, 319 (App. Div. 2016) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)). "Reversal is warranted when we conclude a mistake must have been made because the trial court's factual findings are 'manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . .'" Ibid.

---

[7] As noted previously, the November 18, 2016 orders also denied plaintiff's application to modify his child support obligation prior to August 15, 2015, and ordered him to pay arrears. Other than summarily stating that this appeal is "from the [o]rders of November 18, 2016," and that the court's supplemental November 18, 2016 order "denied the application to modify [plaintiff's] child support obligation prior to August 15, 2015," plaintiff fails to address in his brief specifically why the court's order related to child support was in error. Accordingly, we consider those issues waived. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

14

(alteration in original) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

We accord special deference to the Family Part's "special expertise in the field of domestic relations." Cesare v. Cesare, 154 N.J. 394, 412 (1998); see Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) ("'the law grants particular leniency to agreements made in the domestic arena,' thus allowing 'judges greater discretion when interpreting such agreements'") (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)). "However, when reviewing legal conclusions, our obligation is different; '[t]o the extent that the trial court's decision constitutes a legal determination, we review it de novo.'" Landers, 444 N.J. Super. at 319 (alteration in original) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)).

Every application to modify an alimony award "rests upon its own particular footing and the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006) (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)). The trial court may modify alimony awards "from time to time as circumstances may require." N.J.S.A. 2A:34–23. "A party seeking modification of his or her child support obligation

has the burden of demonstrating a change of circumstances warranting an adjustment."  Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012) (citing Lepis v. Lepis, 83 N.J. 139, 157 (1980)).

An assessment of changed circumstances requires a judge to examine the parties' current situation and the situation when the order was entered.  Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990) ("[I]t is clear that the changed-circumstances determination must be made by comparing the parties' financial circumstance at the time the motion for relief is made with the circumstances which formed the basis for the last order fixing support obligations.").  Further, an alimony award generally should not be modified unless the change in circumstances is permanent.  Lepis, 83 N.J. at 151; Donnelly v. Donnelly, 405 N.J. Super. 117, 128 (App. Div. 2009).

"In an application brought by a supporting spouse for a downward modification in alimony, such as the present case, the central issue is the supporting spouse's ability to pay."  Miller v. Miller, 160 N.J. 408, 420 (1999). In addition, whether the parties agreed to a fixed amount of alimony "regardless of changes in circumstances," or to reject the Lepis standards for modification, is itself a circumstance that factors into the analysis.  Morris, 263 N.J. Super. at 242.  Such provisions, known as "anti-Lepis" provisions, see id. at 240-41,

16

245, are valid when their enforcement is "not unwarranted under the circumstances . . . ." Id. at 245-46. Whether a particular clause is an anti-Lepis provision depends on the common intent of the parties. See Quinn v. Quinn, 225 N.J. 34, 45 (2016) ("A settlement agreement is governed by basic contract principles.").

Here, in its March 2, 2018 statement of reasons, the court found that "[p]laintiff had the ability and the obligation to maintain the alimony and child support obligations, as he agreed to, through August 1, 2015." In support of this finding, the court relied upon the forensic expert report which indicated that plaintiff's average gross income from his businesses, with certain adjustments, was $113,872 between 2007 and 2014. As the court noted, $113,872 falls within the $110,000 to $160,000 "gross annual income" range provided in the PSA.

The court also found based on the parties' representations in the PSA and the evidence presented, defendant had a continued need for alimony. As to defendant's income, the court found "[t]he parties agreed in the PSA that [d]efendant was capable of earning only $15,000 per year, and no concrete evidence was ever presented to the [c]ourt that [d]efendant earned significantly above such a salary."

A-1743-16T2

There is no competent evidence in the appellate record to dispute the court's finding that defendant was capable of earning only $15,000 per year. Similarly, the record is devoid of evidence disputing the clear provision in Article Two that plaintiff's alimony obligation was modifiable upon the death or changed financial circumstances of either party, plaintiff's retirement or anticipation of retirement, defendant's remarriage, or defendant's cohabitation with an unrelated person for thirty or more days, but not until after August 1, 2015. Based on these findings, which are entitled to our deference, the court found the PSA "contained enforceable anti-Lepis provisions," one of which provided that "alimony shall not be amended by an offset or modification until after August 1, 2015."

Further, because plaintiff failed to identify where in the record the trial court was presented with competent evidence to contradict the clear provision in Article Two, or dispute the court's findings regarding the parties' incomes prior to August 1, 2015, we also conclude the trial court did not abuse its discretion in resolving those issues without a plenary hearing. See Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 592-93 (App. Div. 2016) (explaining the court has the discretion to decide a motion for modification exclusively on the papers); Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976) ("An

inflexible rule requiring a plenary hearing" on every matrimonial application "would impede the sound administration of justice, impose an intolerable burden upon our trial judges, and place an undue financial burden upon litigants.").

Turning to the court's decision to modify plaintiff's alimony after August 1, 2015, we agree with plaintiff that the court's findings "do not adequately inform the parties or this [c]ourt about the incomes of the parties which were used to determine the ability of the parties to sustain themselves."  Again, in its March 2, 2018 statement of reasons, the court stated it "believe[d] that [p]laintiff had the ability and the obligation to maintain the alimony and child support obligations, as he agreed to, through August 1, 2015."  The finding that plaintiff "had the ability . . . to maintain the alimony . . . obligations" with an average annual income of $113,872 conflicts with the court's finding in its November 18, 2016 statement of reasons that an income of $113,872 rendered modification fair and equitable after August 1, 2015.  See Miller, 160 N.J. at 420 ("In an application brought by a supporting spouse for a downward modification in alimony, such as the present case, the central issue is the supporting spouse's ability to pay.").

Further, the expert's report only concerned plaintiff's financial circumstances from 2007 to 2014. While we acknowledge the court stated

19                                                          A-1743-16T2

plaintiff was consistently earning at the low end of the income range in the PSA, the court already found that plaintiff "had the ability . . . to maintain the alimony and child support obligations" when he was earning approximately $113,872. Thus, on remand, the court should clarify why modification of alimony was fair and equitable when plaintiff was able to pay his alimony obligations while earning approximately $113,872. In addition, the court should also make findings of fact as to whether any reduction in plaintiff's income from the time of the PSA was temporary or permanent. This is significant because a temporary change in income does not support a modification of alimony. See Lepis, 83 N.J. at 151 ("Courts have consistently rejected requests for modification based on circumstances which are only temporary."). Such a finding would be particularly relevant here because the expert's report reveals plaintiff's income from 2012 to 2014: 1) exceeded the eight-year average of $113,872 every year; and 2) increased each of those three years.

Similarly, with respect to defendant's financial circumstances, in its November 18, 2016 statement of reasons, the court "fe[lt] that it is appropriate at this time to impute the [d]efendant at the number suggested by the [p]laintiff, which is $25,000.00/year." The court based this decision in part on evidence that it found "suggest[ed]" defendant was "making somewhat more than the

$15,000.00 that was imputed to her." However, as we noted, in its March 2, 2018 amplified statement of reasons, the court found "no concrete evidence was ever presented to the [c]ourt that [d]efendant earned significantly above" $15,000 and that the parties agreed defendant could only earn $15,000.

Moreover, as plaintiff notes, the court failed to discuss the parties' marital standard of living in its changed-circumstances analysis. The marital standard of living "serves as the touchstone for the initial alimony award and for adjudicating later motions for modification of the alimony award when 'changed circumstances' are asserted." Crews v. Crews, 164 N.J. 11, 16 (2000); see Beck, 239 N.J. Super. at 190 ("the changed-circumstances determination must be made by comparing the parties' financial circumstance at the time the motion for relief is made with the circumstances which formed the basis for the last order fixing support obligations"). The court did not consider the provisions in the PSA that established the parties' marital lifestyle as "a middle class lifestyle" and stated that "the support payable to [defendant] shall provide both parties with the ability to substantially maintain the current lifestyle."

In light of the time that has elapsed since the court's November 18, 2016 order, on remand the court should require the parties to provide updated certifications detailing their financial circumstances necessary to resolve

21

plaintiff's request for a modification of his alimony. Upon receipt of those supplemental submissions, the court should determine whether a plenary hearing is necessary. See Avelino-Catabran, 445 N.J. Super. at 592-93; Shaw, 138 N.J. Super. at 440. In light of our opinion vacating a portion of the November 18, 2016 order, and reserving for the trial court the decision to conduct a plenary hearing upon receipt of supplemental submissions, we need not address whether the trial court was obligated to conduct a plenary hearing based on the first motion judge's April 25, 2012 order.

Finally, the parties raised several issues before the trial court that were referred to a post-judgment early settlement panel. Nothing in our opinion precludes the parties from raising before the trial court on remand any issue not resolved by the early settlement panel.

To the extent we have not specifically addressed any of plaintiff's remaining arguments, we conclude they are of insufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22

A-1743-16T2