239 N.J. Super. 183 (1990)
570 A.2d 1273
M. ARTHUR BECK, PLAINTIFF-APPELLANT,
v.
SUSAN M. BECK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1990.
Decided March 2, 1990.
*185 Before Judges PRESSLER, LANDAU and LOWENGRUB.
Howard Stern argued the cause for appellant (Stern, Steiger, Croland, Tanenbaum & Schielke, attorneys; Joan G. Waks, on the brief).
John A. Montecuollo argued the cause for respondent (G. Dolph Corradino, attorney).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff M. Arthur Beck and defendant Susan M. Beck were divorced by judgment entered on June 17, 1979. During the nearly eleven years which have since elapsed, there have been frequent post-judgment applications to enforce, modify or terminate various of the obligations then imposed upon the parties. The present appeal is taken by plaintiff from an order entered on March 31, 1989, on defendant's enforcement motion which fixed his then arrearages at $7,775.02 and, by inference, denied his cross-motion for termination or, alternatively, reduction of his support obligation. We reverse and remand for an evidentiary hearing.
We review first the judicial history of plaintiff's support obligations. The judgment of divorce required him to pay defendant annual support designated as "unallocated alimony" in the amount of $29,000. It further provided that on emancipation of the elder of the parties' two daughters, then ten, alimony would be reduced to $27,000, and upon emancipation of the younger, then eight, alimony would be further reduced to *186 $23,000.[1] Contingent child support provisions were made in the event of defendant's remarriage, and various other collateral support obligations imposed on plaintiff. This basic scheme was modified by order entered May 1, 1980, which increased the annual unallocated alimony to $37,000, subject to reduction to $32,000 and then to $23,000 as the children were emancipated.
In 1985, plaintiff moved for termination or reduction of alimony on the ground that defendant, who had not been employed outside the home at the time of the divorce, had since obtained some employment, held two masters degrees, and was capable of self-support. In a lengthy written opinion issued after a plenary hearing, the motion judge concluded that while termination of alimony was not then appropriate in the circumstances, nevertheless defendant was
well equipped to engage in a form of employment which will provide a salary commensurate with her skills and experience, and which will assist in mitigating the support obligation of [plaintiff]. As such, the Court will order a 25% reduction in the amount of alimony currently being paid by [plaintiff].
Accordingly, an order was entered on August 20, 1985, reducing the unallocated alimony to $27,750 with a reduction of $4,600 and $9,400 upon the children's respective emancipations.
In the fall of 1986, the older daughter started college. On plaintiff's application the then motion judge, in September 1986, ordered a further reduction in unallocated alimony in the amount of $4,600 but directed plaintiff to assume the full costs of her education, which he did.
The next significant litigation events are those directly in issue here. In August of 1988 plaintiff again moved for termination of alimony. This motion was supported by his certification in which he recited with specificity the facts underlying his assertions that his income as a commercial photographer had declined dramatically over the last several years and *187 appeared likely to continue to decline, that his support obligation for the children had increased dramatically by reason of the fact that in September both would be attending college, and that defendant's income had increased dramatically by reason of her receipt of substantial earned and unearned income. The certification was supported by his corporation's 1986 and 1987 financial statements and by his personal 1987 federal income tax return, which showed a decline in personal income from the level of previous years. Plaintiff's motion was not heard until September 23, 1988. Prior to that date, plaintiff had unilaterally adjusted the unallocated alimony to treat the second daughter's imminent college attendance in the same manner as the court had treated the elder's in 1986, namely, by assuming all of the college costs and reducing alimony by $9,400.[2] Defendant filed an answering certification disputing plaintiff's assertions of his increasing financial inability, and reply certifications were filed by each.
Following oral argument, the judge issued a written letter decision dated November 15, 1988. He concluded that plaintiff had made an inadequate showing to warrant a reduction of alimony, opined that plaintiff's 1988 income would equal his 1987 income, and concluded that plaintiff's certifications failed to "indicate a present impairment of plaintiff's ability to support himself." The letter concluded with the statement that "[p]laintiff has failed to make the required threshold showing and his motion to terminate alimony is, therefore, denied." Upon receipt of the letter, defendant's attorney wrote to the judge pointing out that the letter opinion failed to address the question of a reduction of alimony by reason of the younger daughter's college attendance. In a supplemental letter decision dated December 20, 1988, the judge repaired the omission by concluding that because the younger daughter was not yet emancipated, there was "no justification for plaintiff tendering *188 a reduced amount of monthly support." Insofar as we are able to determine, no order was ever proffered to the trial judge or entered memorializing and decreeing the substantive contents of either letter decision.[3]
Plaintiff, because of his asserted inability, failed fully to comply with his alimony obligation as last fixed in August 1985, as modified by the September 1986 order. Defendant then moved for enforcement pursuant to R. 1:10-5. Plaintiff cross-moved for relief from the alimony obligation. The cross-motion was supported by a certification further documenting the decline in his business and by his 1988 federal income tax return, which, contrary to the trial judge's earlier prediction, showed a decline in gross income from $155,000 in 1987 to $118,000 in 1988. The motions were argued on March 31, 1989 before the same judge who had heard the September 1988 motion. In an oral decision then rendered, he concluded that the time for reconsideration or appeal had long since passed and that the change in plaintiff's income  without indicating whether the change was from 1985 or 1988  was not sufficient to merit a hearing. A conforming judgment was entered the same day fixing arrearages under the 1985 and 1986 orders and denying plaintiff any relief from his support obligations.
In considering the issues raised by plaintiff's appeal, we address the procedural questions first. Plaintiff did not appeal or seek reconsideration of the court's November and December 1988 dispositions. Defendant vigorously argues that plaintiff is therefore precluded from seeking relief therefrom by way of a new duplicative motion which, in effect, is nothing other than a "lateral" appeal to the trial court.
*189 Even if the motion were duplicative, a contention we address hereafter, the fact remains that until entry of the March 31, 1989 order, no judicial event had occurred that could have been the subject of either an appeal or a motion for reconsideration because no prior order had been entered disposing of plaintiff's August 1988 motion. The letter decisions of November 15, 1988 and December 20, 1988 were obviously not orders. See, e.g., Heffner v. Jacobson, 100 N.J. 550, 553, 498 A.2d 766 (1985), in which the Supreme Court reconfirmed the principle that "[a]n appeal lies not from a written or oral decision of a court, but only from a judgment or order." Hence, in the absence of an order, there is nothing to review. See also Chimes v. Oritani Motor Hotel, Inc., 195 N.J. Super. 435, 443, 480 A.2d 218 (App.Div. 1984). Moreover, the running of the time periods prescribed by R. 2:4-1(a) for appeal and by R. 4:49-2 for motions for reconsideration is expressly triggered by the date the order is entered pursuant to R. 4:47. Until an order  not a decision nor an opinion nor any other indication of disposition  is entered, neither time period starts to run. See, e.g., Hamm v. City of Clifton, 229 N.J. Super. 423, 427-428, 551 A.2d 1019 (App.Div. 1988); Pogostin v. Leighton, 216 N.J. Super. 363, 370, 523 A.2d 1078 (App.Div. 1987). Consequently, we are satisfied that the only appealable order adjudicating plaintiff's post-1986 applications for relief from his support obligations is the order entered on March 31, 1989, from which plaintiff took a timely appeal. The question then is whether, as tested by the certifications the parties filed between August 1988 and entry of the March 31, 1989 order, plaintiff showed a sufficient change of circumstances within the intendment of Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980), to warrant an evidentiary hearing.
We have no doubt that plaintiff's showing met the Lepis standard. There was clearly a prima facie showing that since entry of the 1985 order, amended in 1986 to reflect the collegetuition obligation for the older daughter, plaintiff's income had declined significantly, his expenses for educating the two children *190 had increased significantly, and defendant's independent income had also increased significantly. Indeed, based on the showing made by the parties prior to the November 15, 1988 letter decision, we disagree with the conclusions there reached by the trial judge respecting plaintiff's right to a Lepis hearing. The substantial decline in his business fortunes was well documented, as was the fact that defendant, who had not been regularly employed when the court reduced alimony in 1985, had since become a wage earner. Moreover, we are satisfied that the trial judge in his letter decision of December 20, 1988 did not properly consider the issue respecting the college education of the younger daughter. The question was not one of her emancipation but rather whether the substantial tuition obligation plaintiff undertook should have resulted in a deduction of unallocated alimony as had been ordered by the court when the older daughter started college.
Finally, we consider the Lepis issue as if proper orders had been entered in 1988 memorializing the two letter decisions. To begin with, it is clear that the changed-circumstances determination must be made by comparing the parties' financial circumstances at the time the motion for relief is made with the circumstances which formed the basis for the last order fixing support obligations. We recognize that intervening incremental changes may be individually insufficient to warrant relief but may eventually be sufficient in the aggregate. Thus, even if the court in the fall of 1988 had properly determined, both substantively and procedurally, that plaintiff had failed to demonstrate a prima facie right to relief because of an insufficient change in circumstances since the 1985/1986 orders, it would not have been precluded from finding that by reason of further deterioration in plaintiff's circumstances since the fall of 1988, he had succeeded, in the spring of 1989, in making the requisite prima facie showing, again measuring from the 1985/1986 orders. Applying this standard, we are convinced that the asserted change in plaintiff's circumstances from August 1988 to March 1989, supported by his 1988 federal income *191 tax return, was sufficient to warrant a Lepis hearing even if denial of the 1988 motion had been substantively correct and encompassed by a requisite order.
In so concluding, we recognize the potential for abuse of the judicial process and waste of personal and judicial resources implicit in the making of repeated "incremental" motions, and we vigorously disapprove such a course of conduct. A litigant who makes such frequent and repetitive applications for purposes of abuse, harassment, or to secure a "lateral appeal" should be dealt with by available sanctions, including the payment of realistic counsel fees and costs. He should not, however, ordinarily be penalized by the deprivation of a remedy to which he would otherwise be entitled.
The order entered on March 31, 1989, to the extent that it fixed arrearages and denied plaintiff relief by way of reduction or termination of alimony, is reversed. We remand for a plenary hearing as to changed circumstances since the 1985 order, as amended in 1986. Should plaintiff be found entitled to relief, the question of retroactivity thereof, in whole or in part, shall be determined by the court in its discretion.
NOTES
[1] As to the parties' adjudicated joint custody of the children, see Beck v. Beck, 86 N.J. 480, 432 A.2d 63 (1981). An additional order respecting custody and visitation was entered on June 16, 1982.
[2] The total resulting reduction of $14,000 is, plaintiff claims, considerably less than the same $25,000 annually he pays for the education of the two girls.
[3] Despite the apparent completeness of the parties' respective appendices, we found therein no order relating to either letter decision. On our consequent inquiry of the attorneys for both parties, we were advised that such orders were not entered.