**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2851-19

NANCY HYLEMON,

    Plaintiff-Appellant,

v.

MICHAEL J. HYLEMON,

    Defendant-Respondent.

_____

Argued October 5, 2021 – Decided October 26, 2021

Before Judges Fisher and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0677-16.

Dale E. Console argued the cause for appellant.

Marisa Lepore Hovanec argued the cause for respondent (Gomperts Penza McDermont & Von Ellen, LLC, attorneys; Marisa Lepore Hovanec, of counsel and on the brief).

PER CURIAM

After a plenary hearing, plaintiff Nancy Hylemon, appeals an order for post-judgment modification reducing alimony she received from the defendant, Michael Hylemon, from $500 per week to $400 per week. For the reasons set forth below, we reverse.

## I.

The parties were married in 1999 and divorced in 2016. The final judgment of divorce incorporated a Property Settlement Agreement (PSA) under which defendant was obligated to pay plaintiff $500 per week in spousal support for a period of fifteen years. The PSA did not establish a standard of living for the parties. At the FJOD hearing, both parties acknowledged on the record that they entered the PSA willingly and understood that, under the terms of the PSA, they "may not be able to maintain the same standard of living . . ." as during the marriage.

In July 2019 defendant filed a motion to modify his alimony payment. He argued that plaintiff, who was unemployed at the time of divorce, had since obtained work, establishing a prima facie case of changed circumstances warranting a review of the alimony obligation. At the motion hearing, the trial judge determined that plaintiff's change in employment was a contested factual issue and scheduled a plenary hearing. Additionally, the trial judge granted

2

defendant's request for plaintiff to provide an updated Case Information Statement (CIS) and all recent paystubs. The plenary hearing took place on December 24, 2019, as well as January 28 and February 11, 2020.

At the plenary hearing, defendant testified that plaintiff worked part-time during the marriage but was not working when the final judgement of divorce was entered. He testified to the differences between his CIS at the time of the divorce and his current CIS, asserting that during the marriage he was responsible for paying all of the bills and sometimes transferred funds from retirement accounts to "stay out of the red."

Defendant testified that his expenses increased after the marriage. He provided two main reasons for this increase: he incurred a mortgage and he testified that he "forgot" to include certain expenses in his original CIS. He admitted on cross-examination that he neglected to include several accounts and assets on his CIS, such as his pension and annuity accounts, his inherited IRA, and his motorcycle. Defendant also acknowledged that he did not reduce his expenses after the marriage, admitting that his credit card spending had remained the same. Defendant testified that due to his alimony obligation, he cannot pay his current expenses with his income alone; therefore, he uses savings and credit cards to cover the shortfalls.

3

The plaintiff testified about her employment history from before and after the divorce. She explained she was unable work for several months due to back surgery and used funds from the divorce settlement to cover her costs of living during this time. She also used a portion of her settlement to purchase and renovate an old mobile home. She pays $625 per month to rent a mobile home lot. She testified that she spends $125 to $150 per week on food, $75 per month on prescription medications, and has $729 in monthly credit card payments.

Plaintiff's position at the hearing was that her standard of living is below the standard she enjoyed while married. She was unable to provide her CIS from the time of divorce, but she asserted that defendant's CIS reflects the marital bills because he managed the money during the marriage. Plaintiff also testified extensively about her bank account deposits and withdrawals in the years between the divorce and the plenary hearing.

Plaintiff's counsel testified about the factors that went into the negotiation and completion of the 2016 PSA, but she advised the trial court that she could not locate plaintiff's CIS. The factors included, but were not limited to: the fifteen-year alimony duration, plaintiff's work potential, her medical issues, her age at the time of divorce, her employment skills, and her education level. According to counsel, this information facilitated the alimony calculation.

A-2851-19

Counsel testified that the parties, in her view, felt comfortable settling in 2016 because they had account statements, credit card statements, and answers to interrogatories. Moreover, she testified that plaintiff was never adjudicated disabled so " she ha[d] an obligation to contribute . . ." and, in agreeing to $500 per week, the parties understood that plaintiff was "going to have to get a full-time job with benefits."

After the close of the plenary hearing, the trial court found all three witnesses credible, and made findings. On March 13, 2020, the court issued an order modifying defendant's alimony payment downward and placed an oral statement of reasons on the record.

On changed circumstances, the court found that "[a]t the time of the divorce [plaintiff] was working part-time, . . . [and] [i]s now employed on a full-time basis." Because of this, the trial court concluded that defendant "met his burden of demonstrating a change in circumstances . . . [because] plaintiff's full-time employment status is a change in circumstances . . . [t]hat change [being] increased income of the plaintiff."

Next the court evaluated the standard of living of the parties to see if a modification was warranted. It explained that the standard of living experienced

during the marriage is the "touchstone for . . . adjudicating . . . modification of . . . alimony award[s] when changed circumstances are asserted."

Despite finding plaintiff's testimony credible and honest, the judge concluded that plaintiff's proofs about her past and present lifestyle fell short. Specifically, the judge found plaintiff "did not provide relevant testimony as to her current standard of living." Additionally, her testimony on the standard of living during the marriage was "limited at best." By contrast, the court noted defendant had "provide[d] testimony to the standard of living enjoyed by the parties during the marriage . . ." and had "testified to his current standard of living . . . ."

The trial court made findings to establish the standard of living because it was not established in the PSA. Based on the evidence before it, the court found $3,974 attributable to the monthly marital lifestyle, $3,408 to plaintiff's current lifestyle, and $6,557 to defendant's current lifestyle. The trial court also found that the parties' "monthly marital lifestyle [of] $3,974 . . . was fueled in part by credit card debt . . . ." It also noted that the joint annual pre-tax income of the parties while married was approximately $100,000.

6

The court concluded that a decrease in alimony was warranted to "provide[] a measure of relief to the defendant," and reduced defendant's obligation to $400 per week.

On appeal, plaintiff argues that:

> THE TRIAL JUDGE'S FINDINGS OF FACT DO NOT COMPORT WITH THE TESTIMONY ON THE RECORD AND THE LEGAL CONCLUSIONS DRAWN THEREFROM ARE INCONSISTENT WITH THE LAW AND RESULT IN MANIFEST INJUSTICE.

## II.

The trial court has "broad discretion" in reviewing an application to modify alimony. Storey v. Storey, 373 N.J. Super. 464, 470 (App. Div. 2004) (citing N.J.S.A. 2A:34-23). The decision of a family court to modify alimony is reviewed under an abuse of discretion standard. Larbig v. Larbig, 384 N.J. Super. 17, 23 (App. Div. 2006). A reversal is only warranted if the decision was inconsistent with controlling legal principles or the evidence before the court. Bermeo v. Bermeo, 457 N.J. Super 77, 84 (App. Div. 2018) (citation omitted).

An alimony order is "always subject to review . . . on a showing of 'changed circumstances.'" Crews v. Crews, 164 N.J. 11, 28 (2000) (quoting Lepis v. Lepis, 83 N.J. 139, 146 (1980)). Changed circumstances permitting a modification of alimony include "an increase or decrease in the income of the

supporting or supported spouse," Quinn v. Quinn, 225 N.J. 34, 49 (quoting J.B. v. W.B., 215 N.J. 305, 327 (2013)), or the subsequent employment of the dependent spouse, Lepis, 83 N.J. at 151.

When a party moves for modification, the trial court undertakes a two-step inquiry.  Should the court determine a modification of support is warranted after performing both steps, then the new amount is set according to the criteria of N.J.S.A. 2A:34-23(b).  The first step determines whether "a prima facie showing of changed circumstances . . ." has been made.  Miller v. Miller, 160 N.J. 408, 420 (1999) (citing Lepis, 83 N.J. at 157-59).  The second step of the analysis evaluates whether the change is so significant it renders "enforcement of the [existing] agreement inequitable. . ." and entails a modification of support. Glass v. Glass, 366 N.J. Super. 357, 379 (App. Div. 2004).

An increase in the dependent spouse's income is a potential "changed circumstance" that may result in a modification.  See Lepis, 83 N.J. at 151 (indicating that post-divorce employment by previously unemployed dependent spouse would constitute changed circumstances).  See also Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990) (finding prima facie case of changed circumstances based in part on dependent spouse's change from unemployed to wage earner).  Often, parties will provide for such a change in the terms of the

settlement agreement. However, if the agreement is silent as to change and the modification motion is based on the improvement of one party's finances, the analysis of whether a modification is warranted includes an assessment of whether the agreement remains fair and equitable, given the parties' expectations and understandings at the time they entered into it. Glass, 366 N.J. Super. at 376.

In Glass, the dependent spouse, who had remained unemployed during an 11-year marriage, began working shortly after the divorce and was earning over $50,000 per year at the time of the motion. Id. at 365-66. She had accumulated more than $100,000 in savings and lived in a house that was comparable to the one the parties shared during the marriage. Id. at 367. The court found that the settlement agreement remained fair and equitable and that the change in circumstances was not significant enough to override the parties' existing alimony arrangement and did not warrant a modification. Id. at 378-79.

The standard of living while married is the "touchstone" of this second inquiry. Crews, 164 N.J. at 16. If the marital standard was not established at the time of the original judgment, the court addressing modification must make that determination. See Glass, 366 N.J. Super. at 370-71. This "touchstone" is critical because comparing the parties' financial condition while married to their

present circumstances permits the court to assess whether the change warrants modification. Lepis, 83 N.J. at 157-58. A decrease in alimony is called for when the change in circumstance renders the support received by the dependent spouse "unnecessary" to maintain the standard of living established in the original agreement. Id. at 153.

## III.

The trial court found that plaintiff's recent transition from a part-time employee while married to full-time employee at a local clothing store represented an increase in income which constituted a change in circumstance. After addressing step one, the court turned to "whether that change in circumstance warrants a downward modification in Mr. Hylemon's alimony payments, and if so, how much."

Because the Hylemons' PSA did not establish a standard of living, the trial court made the determination. The trial court found plaintiff's monthly expenses amounted to $3,408. In making this finding the court noted that plaintiff's "current standard of living is . . . lower than the marital standard of living . . . " and her modest monthly income of $1,679 "falls well short of her expenses" so the "negotiated alimony helps . . . fill the void." As for the defendant, the court found his current monthly expenses to be $6,557 and determined that "[b]ut for

th[e] alimony obligation [defendant's] monthly expenses are similar to his marital lifestyle." After evaluating the alimony factors set forth in N.J.S.A. 2A:34-23(b), the trial court ordered the reduction of alimony by one-hundred dollars per week. Based on the record before us, we disagree. The record shows plaintiff is unable to live in a financially equivalent manner to the standard of living established during the parties' marriage, even with her present income and support payments. Plaintiff's increase in income is not the "significant" increase envisioned in Glass that would justify a downward modification of the agreement, even when accounting for the reasonable expectations of the parties. See Glass, 366 N.J. Super. at 379, 376.

> An application to modify an agreement is an exception, not the rule. Judges and litigants alike contemplate that agreements entered into in good faith containing provisions such as . . . alimony shall be performed in accordance with their terms. The exception is that circumstances will arise that make enforcement of the agreement inequitable. These circumstances do not include a supported spouse earning a modest sum of money that will allow her to save for her future.
>
> [Id. at 379 (emphasis added).]

The trial court reduced plaintiff's alimony while simultaneously finding that she currently lives below the marital standard, even with her transition to full-time work. The court's decision was inconsistent with the evidence and the

11

controlling principles in <u>Glass</u>.  <u>See</u> <u>Bermeo</u>, 457 N.J. Super. at 84.  The one-hundred dollar per week reduction in alimony cannot be supported on this record.

The judgment is reversed, and the trial court's post-judgment modification order is vacated.  The alimony of $500 per week set forth in the 2016 PSA is reinstated retroactive to the date of the trial court's modification order.  We remand to the trial court for it to determine, in its sound discretion, the award of attorney's fees.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2851-19