**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0061-22

T.K.,[1]

    Plaintiff-Respondent,

v.

R.K.,

    Defendant-Appellant.

_____

Submitted February 13, 2024 – Decided March 8, 2024

Before Judges Sumners and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0950-09.

August J. Landi, Jr., attorney for appellant.

Law Offices of Steven P. Monaghan, LLC, attorneys for respondent (Kristin Stoop Pallonetti, on the brief).

PER CURIAM

---

[1] We use initials to refer to the parties and the minor child to protect their privacy and preserve the confidentiality of these proceedings. R. 1:38-3(d)(13).

Defendant R.K. appeals from the July 29, 2022 Family Part order, which denied a plenary hearing regarding custody and parenting time because the judge found no change in circumstances. Following our review of the record and applicable legal standards, we affirm.

I.

Defendant and plaintiff T.K. were married in June 2006. They share a minor child, C.K., born in June 2008. C.K. was diagnosed with autism spectrum disorder, pervasive developmental disorder, and attention-deficit/hyperactivity disorder. In August 2009, the parties divorced and incorporated into their final judgment of divorce their marital settlement agreement (MSA). The parties agreed to joint legal and shared residential custody of C.K. Plaintiff was designated as the parent of primary residence and defendant as the parent of alternate residence. The MSA provided they would jointly make all major decisions concerning C.K.'s health, safety, education, welfare, and religious upbringing.

Shortly after the parties divorced, disagreements arose regarding C.K.'s education and medical decisions. In 2011, defendant moved for custody, to become the parent of primary residence, and to remove C.K. from a "special needs preschool program," which was denied. The motion judge ordered "an

2

independent evaluation of [C.K.] regarding his [Individualized Education Plan] and enrollment in the special needs program." Thereafter, a plenary hearing was ordered regarding "educational-decision-making authority" and other ancillary relief. After a parenting coordinator was appointed in 2013 to assist the parties with education and medical disputes, the coordinator recommended "a change from joint legal custody to sole legal custody . . . in favor of [plaintiff]" or alternatively, that plaintiff "make all medical and academic decisions for [C.K.]" In 2014, the parties settled, agreeing to "resume joint legal custody" of C.K. and that "custody decisions shall be discussed . . . via email only."

In 2019, plaintiff moved for: a modification of parenting time; a custody neutral assessment (CNA); defendant's attendance in a therapeutic program; a review of the Division of Child Protection and Permanency's (DCPP) file; C.K. to be interviewed; and other related relief. The DCPP had become involved regarding C.K.'s welfare. Plaintiff maintained defendant was "regularly leaving [their] son in his car for several hours at a time while he worked," and was "repeatedly taking [C.K.] out of [s]tate" without informing her. Defendant filed a cross-motion to: deny plaintiff's requested relief; receive a right of first refusal; restrain and sanction plaintiff for not abiding by their parenting time agreement; receive legal fees; and for other related relief.

3

In September, a new motion judge heard the motions and found the parties had demonstrated "a sufficient showing of changed circumstances and that the current arrangement may no longer [be] in the best interest[s] of the child." The judge ordered "the parties' issues of custody and parenting time [be] referred to mediation" and a CNA be completed. Based on plaintiff's allegation, the judge further ordered the DCPP to provide its report and summary to the court. The parties were to comply with the MSA and attend co-parenting therapy because of the "high level of hostility between the parties" and lack of improvement with the parenting time coordinator.

In December, the CNA report was submitted. The judge permitted the parties and counsel to review the CNA but barred its release. Plaintiff and her counsel reviewed the CNA before the hearing, while defendant and his counsel reviewed it the day of the hearing. At the hearing, the judge confirmed the parties reviewed the CNA, that she had reviewed the "in-depth and comprehensive report," and advised it "raise[d] a lot of concerns for the child and [defendant]'s behavior toward[] the child." The judge advised the recommendations would be ordered and if the parties had "any questions," they could "raise them." When asked if he had any questions, defendant responded

A-0061-22

"I am not agreeing to this." After further inquiry, his attorney responded there were no questions.

The judge awarded temporary sole custody to plaintiff pending further order and directed the DCPP to become "re-involved" with the family. Defendant was ordered to: "complete a [therapeutic program]"; cooperate with the Guardian Ad Litem (GAL) appointed; "undergo a comprehensive psychological evaluation"; and then have "[t]herapeutic [s]upervised" visitation with C.K. Defendant's completion of the ordered services was a "threshold" requirement, and the judge stated that from "the court's perspective, the paramount issue [wa]s safety of the child, best interests of the child," and there was "a lot that [defendant] ha[d] to do before . . . hav[ing] unfettered, open parenting time with that child." The judge ordered a "status update" in seventy-five days to provide time for: the GAL to get involved, defendant "to do what he need[ed] to do" and the submission of a GAL report. The judge ordered the GAL "to more closely examine the concerns, interview the parties who provided letters during the assessment process, perform an in-depth review [of C.K.'s] treatment and school records, and communicate with any involved mental health professionals for" C.K. The GAL was to "provide recommendations regarding issues of legal custody and time sharing" and the cost of the GAL was allocated

between the parties. As defendant failed to pay the GAL's retainer for several months and complete the threshold programs, the matter was not heard.

On November 17, 2020, defendant moved for: modification of the January 2020 order barring the release of the CNA; a due process violation finding; a meeting with the GAL; and a case management conference (CMC). Plaintiff cross-moved for: a denial of defendant's requested relief; defendant to be ordered to complete the psychological evaluation; and counsel fees. The judge denied defendant's motion, finding his prior and current counsel were "afforded the opportunity to review the CNA." Further, the judge noted reconsideration of the order was out of time and that the ordered reunification requirements had not occurred because defendant failed to pay the GAL's retainer for approximately eight months. The judge partially granted plaintiff's relief, ordering defendant to submit his psychological evaluation in camera and awarding counsel fees.

In a letter dated May 13, 2021, the GAL advised the court that, with the assistance of a reunification therapist, a full weekend visit with defendant had been arranged at the end of April. During that weekend, defendant called the police about "his rights" to remove a "tracker" plaintiff had installed in C.K.'s phone. The GAL reported defendant took C.K.'s phone several times, including

6

"at one point . . . pinn[ing C.K.] down and forcibly remov[ing] the phone from his pocket." The GAL explained that although prior efforts to reunite C.K. and defendant had restored their relationship and alternate weekend parenting time was initiated, the GAL felt the process was "almost back to square one" after the incident. Based on C.K.'s "justified fear of spending extended periods of time" with defendant, the GAL was "forced to revert back to the old schedule" and suggested two daytime visits with C.K. at defendant's home. The GAL conveyed that after the daytime visits, the reunification therapist and the GAL would reevaluate the possibility of "resuming a single overnight" visit. The GAL represented that defendant failed to avail himself of the visitation opportunities and had voluntarily chosen not to exercise his parenting time with C.K.

In July, defendant filed a motion seeking: reinstatement of the MSA parenting schedule; a plenary hearing; a due process violation finding; sealing of the CNA from further consideration; a GAL meeting with the parties; a CMC; and counsel fees. Plaintiff cross-moved for: a denial of defendant's motion; review of the CNA; enforcement of prior orders; counsel fees; and other equitable relief.

On December 9, a different motion judge denied defendant's motion, finding it was "essentially a motion for reconsideration packaged as an initial

7

motion" and defendant "failed to prove a change [in] circumstances" on the merits. The judge required "gradual[] reinstate[ment]" of defendant's parenting time based on the child's best interests. Specifically, the judge found defendant chose not to exercise further parenting time offered to him, refused to engage in the reinstatement plan, and continued to rehash arguments previously presented. The GAL was directed to work with the parties to "gradually resume unsupervised overnight visitation," and a CMC was scheduled in three months. Defendant appealed, which we dismissed on March 8, 2022 as interlocutory.

On March 9, at a CMC, the judge ordered the matter "closed" with an accompanying oral statement of reasons. The judge determined that "[defendant] ha[d] [not] followed any of the recommendations," there "were [no] material facts in dispute . . . justifying a plenary hearing," and a motion to address future changes could be filed in the ordinary course. Defendant moved for leave to appeal, which we denied as the appeal was from a final order.

On May 17, defendant again moved to: schedule a plenary hearing; enforce daily communication with C.K.; vacate prior court orders; vacate the GAL's and attorney's fees awarded; release the CNA; and deny plaintiff's fee request. On July 14, plaintiff cross-moved, requesting: denial of defendant's motion; the continued denial of a plenary hearing; the continued denial of a

8

CMC; the judge review the CNA; the GAL to continue providing recommendations; the parties continue to follow the CNA and the GAL's recommendations; enforcement of prior orders awarding fees; award of fees; and any equitable and just relief.

On July 29, after argument, the judge issued a twenty-page order and a statement of reasons. The judge denied without prejudice defendant's request for a plenary hearing, finding no genuine issue of material fact existed. The judge reasoned defendant had "voluntarily chose[n] to make himself unavailable for the unsupervised, overnight weekend parenting that he s[ought] to re-establish" and "gave up participating" in reunification. Further, the judge ordered defendant to "continue with the process" of reunification. The judge denied defendant's other ancillary requested relief. Plaintiff's requested relief was granted except for the demand that the CNA report to be reviewed.

On appeal, defendant contends the trial court erred in: not ordering a plenary hearing; denying a plenary hearing on procedural grounds; failing to establish present circumstances; and off-loading judicial responsibility to the GAL.

A-0061-22

## II.

"We accord deference to Family Part judges due to their 'special jurisdiction and expertise in family [law] matters.'" Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019) (alteration in original) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Our scope of review of Family Part orders is limited. Cesare, 154 N.J. at 411. A judge's findings "are binding on appeal so long as their determinations are 'supported by adequate, substantial, credible evidence.'" Gormley, 462 N.J. Super. at 442 (quoting Cesare, 154 N.J. at 411-12).

A decision concerning custody and parenting time rests in "the sound discretion of the trial courts." Pascale v. Pascale, 140 N.J. 583, 611 (1995); see Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 157 (App. Div. 2003) ("Judges of the Family Part are regularly called upon to make exceedingly difficult and delicate decisions as to the best interest[s] of the children, and we are obliged to give deference to both their findings and the exercise of their sound discretion."). We review a judge's decision on a motion to modify custody without conducting a plenary hearing for abuse of discretion. Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015).

A-0061-22

In custody cases, "it is well settled that the court's primary consideration is the best interests of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). "A party seeking to modify custody must demonstrate changed circumstances that affect the welfare of the children." Ibid. "Where there is already a judgment or an agreement affecting custody in place, it is presumed it 'embodies a best interests determination' and should be modified only where there is a 'showing [of] changed circumstances which would affect the welfare of the child[].'" A.J. v. R.J., 461 N.J. Super. 173, 182 (App. Div. 2019) (quoting Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993)); see also Lepis v. Lepis, 83 N.J. 139, 157 (1980). To determine whether the requisite changed circumstances exist, the court must consider the circumstances that existed at the time the current order was entered. See Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990); see also Donnelly v. Donnelly, 405 N.J. Super. 117, 127-29 (App. Div. 2009). Then, the court can "ascertain what motivated the original judgment and determine whether there has been any change in circumstances." Id. at 288. The party seeking to change a judgment or agreement involving a custodial arrangement bears the burden of demonstrating the status quo is no longer in a child's best interests. See Bisbing v. Bisbing, 230 N.J. 309, 322 (2017).

11

Once the moving party makes a prima facie showing of changed circumstances, only then is the moving party entitled to "a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing . . . order." Faucett v. Vasquez, 411 N.J. Super. 108, 111 (App. Div. 2009). Stated differently, a plenary hearing is not required unless the parties' submissions demonstrate "there is a genuine and substantial factual dispute regarding the welfare of the children." Hand, 391 N.J. Super. at 105; see also Lepis, 83 N.J. at 159; R. 5:8-6 (requiring the court to "set a hearing date" if it "finds that the custody of children is a genuine and substantial issue").

"[A] judgment involving the custody of minor children is subject to modification at any time upon the ground of changed circumstances." Innes v. Carrascosa, 391 N.J. Super. 453, 500 (App. Div. 2007) (quoting Sheehan, 51 N.J. Super. at 287). However, "not every factual dispute that arises in the context of matrimonial proceedings triggers the need for a plenary hearing." Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995). "[A] plenary hearing is only required if there is a genuine, material and legitimate factual dispute." Segal v. Lynch, 211 N.J. 230, 264-65 (2012). "Without such a

standard, courts would be obligated to hold hearings on every modification application." Lepis, 83 N.J. at 159.

We also review orders denying reconsideration for abuse of discretion. Granata v. Broderick, 446 N.J. Super. 449, 468 (App. Div. 2016). A court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

III.

Based on the record, we are unpersuaded the judge abused her discretion in denying a plenary hearing on custody and parenting time issues as no material issues of fact existed. Defendant presented no competent evidence of his reunification efforts demonstrating a prima facie showing of changed circumstances to alter the existing custody and parenting time plan in C.K.'s best interests, much less a return to the status quo that existed before the MSA was modified in January 2020. Because defendant failed to demonstrate a change in circumstances occurred from the March 9, 2022 order to the order under appeal, he was not entitled to a plenary hearing.

13

Given defendant's candid admission that he did not comply with the court-ordered reunification process, because he felt "brief visits . . . [we]re more hurtful for the child" and the scheduled visits were "insufficient," we are satisfied the judge properly denied the plenary hearing and ordered that defendant and C.K. "undergo[] a reunification process." The necessity for defendant to engage in reunification therapy for C.K.'s best interests is well-supported by the record.

We reject defendant's contention that a plenary hearing is necessary to establish the "present circumstances" and based on the passage of time. In denying the plenary hearing, the judge accurately reasoned that the "court ha[d] been continually involved with the same issues since 2019," defendant "chose to make himself unavailable" for the reunification process, and his actions required the order remain in the child's best interests. She concluded that although defendant "gave up participating," the "GAL and the reunification therapist remain[ed] ready, willing, and able to continue the developed plan." The judge directed the "parties . . . to continue to cooperate with the reunification protocol." We discern no reason to disturb the judge's well-reasoned decision.

We are further unpersuaded by defendant's argument that the "trial judges . . . consistently off-load[ed] judicial responsibility and decision-making to the

14

GAL." As an initial matter, defendant's argument is procedurally defective because he failed to raise the argument before the court in his motion, and it is therefore not properly before us. We generally decline to consider questions or issues not presented below when an opportunity for such a presentation is available unless the questions raised on appeal concern jurisdiction or matters of great public interest. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); see also Zaman v. Felton, 219 N.J. 199, 226-27 (2014).

Nevertheless, we briefly address his contention. "In all cases in which custody or parenting time/visitation is an issue, a [GAL] may be appointed by court order to represent the best interests of the child or children if the circumstances warrant such an appointment." Milne, 428 N.J. Super. at 199 (quoting R. 5:8B(a)). "Once appointed, the GAL provides 'services . . . to the court on behalf of the child . . . [and] acts as an independent fact finder, investigator and evaluator as to what furthers the best interests of the child.'" Id. at 200 (alterations in original) (quoting In re M.R., 135 N.J. 155, 173 (1994)).

Defendant's contention that the GAL has served as a substitute for the "court's exercise of its parens patriae obligation" is unsupported by the record. After the CNA was completed in December 2019, a hearing was held on January 16, 2020. The judge advised the CNA's recommendations would be accepted

15

and provided the parties an opportunity to object and ask questions. Defendant accepted the custody and parenting time plan established in the January order which provided for: therapeutic supervised parenting time, the DCPP's reinvolvement, therapeutic program attendance, temporary sole custody to plaintiff, a psychological evaluation of defendant, therapy for C.K. and plaintiff, and the appointment of a GAL. The GAL was appointed for C.K. to: "communicate with . . . mental health professionals for [C.K.]"; communicate with "the therapeutic supervisor" and defendant; "provide recommendations"; and report to the court the progress in C.K.'s best interests. Relevantly, defendant consented to the selected GAL, did not seek reconsideration, and did not appeal. The record demonstrates, as the judge found, the GAL sought defendant's reunification plan compliance in C.K.'s best interests, but he voluntarily chose not to participate. Defendant's failure to comply with the ordered reunification process is established by the record. Further, the unrefuted history demonstrates the substantial need for a GAL for C.K.'s best interests. Defendant's argument that judges offloaded judicial responsibility is meritless.

To the extent that we have not addressed any of the parties' arguments, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

A-0061-22

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0061-22