**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2870-22

C.R.S.,

    Plaintiff-Appellant,

v.

H.D.,

    Defendant-Respondent.

_____

Submitted November 15, 2023 – Decided August 16, 2024

Before Judges Vernoia and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FD-12-0462-18.

Keith, Winters, Wenning & Harris, attorneys for appellant (Brian D. Winters, on the briefs).

The Williams Law Group, attorneys for respondent (Elena K. Weitz and Heejae Chang, on the brief).

PER CURIAM

Plaintiff C.R.S. appeals from an order denying his cross-motion for modification of an agreement he had with defendant H.D. concerning the residential custody of their two children and an order denying his subsequent reconsideration motion.[1] Perceiving no abuse of discretion in the Family Part judge's determination plaintiff had not demonstrated a change in circumstances that justified a modification of the parties' agreement, we affirm.

I.

The parties had an on-again, off-again dating relationship that began in 2005, lived together from 2009 until 2018, and have two children:  one born in October 2014 and one in July 2016.  Pursuant to a September 18, 2017 consent order, the parties shared joint legal custody of their children.  On January 10, 2019, a Family Part judge entered a consent order in which the parties agreed to continue to share joint legal custody of the children and to follow an agreed-upon schedule in which plaintiff had parenting time on Thursday through Sunday or Wednesday through Friday in alternating weeks plus agreed-upon summer and holiday parenting-time schedules.  They also agreed to "discuss

---

[1]  We use the parties' initials because we include in the opinion information regarding defendant's mental health and mental-health treatment.  See State v. J.H.P., 478 N.J. Super. 262, 283 n.1 (App. Div. 2024) (citing Rule 1:38-3(a)(2)) ("us[ing] initials to protect the confidentiality of defendant's mental health diagnoses and evaluations").

A-2870-22

expanding [plaintiff's] parenting time to include an additional overnight based on [plaintiff's] schedule" and to "exchange financial information . . . for the calculation of child support" when plaintiff obtained employment.

Sometime in 2020, the parties resumed their dating relationship. The parties then spent some time living together with their children in New Jersey. In March 2022, plaintiff moved from Monroe, New Jersey to Scotrun, Pennsylvania; defendant and the children moved to her mother's house in East Brunswick, New Jersey. According to plaintiff, he and defendant had agreed to live in Pennsylvania together with the children; he moved without defendant and the children so the children could finish their school year. According to defendant, plaintiff relocated to Pennsylvania because he was unemployed and his family had a house there; she had considered moving to Pennsylvania but decided against it because she believed it would not be in the children's best interests. After plaintiff moved to Pennsylvania, the parties' dating relationship ended.

The parties executed a handwritten document dated July 29, 2022, in which they agreed "to abide by current custody/visitation agreements aside from" the changes specified in the agreement: plaintiff would "have" the children "if at any point [the] children want[ed] to live w[ith] father mother

agrees"[2]; plaintiff would "assume custody" at the "children's discretion" if defendant's "living/school circumstances" changed; plaintiff would have parenting time every weekend and school holidays; and defendant could have one to two weeks of parenting time in the summer. The parties agreed the "children [would] continue to reside with [defendant] and remain in the same school."

On September 22, 2022, defendant moved to "[e]stablish some sort of child support," to change plaintiff's parenting time to three out of four weekends each month, to share equally parenting time during the children's holidays and summers, and to establish a new meeting place for dropping off the children. She also sought to delete the requirement in the January 10, 2019 consent order that the parties "notify and discuss with each other . . . the appropriate time and manner to introduce their minor children to a significant other."

On October 26, 2022, plaintiff cross-moved for a modification of the parties' custody arrangement, to transfer residential custody of the children to him, to relocate the children to Pennsylvania, and for the appointment of "a

---

[2] We note the document contains a notary-public stamp after the word "father" appears in this portion of the agreement; we cannot discern whether the stamp covers any words after "father" and before the phrase "mother agrees," which appears on the next line of the document.

specialist to speak to both children regarding their homelife at [defendant's home]." In response to a question on the application for modification he submitted, plaintiff identified the following as reasons for his request to change custody: "abandonment, physical [and] mental abuse, mental instability." When asked on the form for the reason for his request to relocate the children, plaintiff stated the parties "had reconciled" and "pursued a house in [Pennsylvania] to raise [their] children," but defendant "backed out" after he had moved.

In support of his cross-motion, plaintiff submitted a document in which he asserted the children had expressed a desire to live with him and had "had enough of their mother's (and their grandmother's) fighting, lying, mental instability, physical and mental abuse, and mistreatment." Plaintiff contended he was more able than defendant to provide "consistency and stability" for the children. He stated the children had expressed their "dislike" for their grandmother, "how she yells at them and bosses them, and how they have no space to enjoy and be as children." He asserted defendant and her mother fought with each other in front of the children. Without providing any photographs or explanation of the basis of his knowledge, plaintiff stated "both children have had bruises on their cheeks and faces from their grandmother." He complained

5

about the time the children spent at their mother's boyfriend's place. He claimed defendant was "not mentally stable" or "fit for long-term parenting."

Plaintiff included on the document a chronology in which he set forth events he said had occurred in 2020, 2021, and 2022. As for events that occurred after the parties' July 29, 2022 agreement, plaintiff referenced defendant being late once to a child drop-off meeting; the times the children had spent at defendant's boyfriend's house, indicating one child had complained about it; one child not wanting to go to school because of bullying; one instance in which defendant had become upset when he declined to let her pick the children up early; a dispute with defendant regarding which party had parenting time during the Rosh Hashanah school holiday; times he had accommodated defendant's requests; and one child's statement that defendant had kicked and broken her tablet.

The parties represented themselves at oral argument on February 13, 2023, and were placed under oath. The parties agreed to keep the same drop-off location and that defendant would have parenting time one weekend per month. They confirmed neither party had been paying child support.

As for the children's primary residence, plaintiff stated he would not have moved to Pennsylvania if he had known defendant would decline to relocate.

6

When the judge asked why he could not move back to New Jersey, plaintiff represented he had started a new job in Pennsylvania in October. Plaintiff contended circumstances had changed because the children's home was "no longer their childhood home"; when he moved to Pennsylvania, defendant "moved her mother in. It became grammy's home." Plaintiff complained about the adjustments the children had to make because their grandmother was living with them, asserted they had not seen a doctor or dentist in over a year, and claimed both children had had lice, one child had had chapped and bloody lips in December, and the other child had had a rash "probably from laundry soap." He said nothing about any purported bruises on the children's face or any physical abuse of the children by their grandmother. He referenced an altercation between defendant and her mother that had happened "a couple years back." He alleged defendant had "checked into a mental institution" because she had "had a breakdown" in 2021. He complained about the time the children spent at defendant's boyfriend's house. He asserted one child was "having a hard time in school."

Defendant conceded "lice has been an issue" and detailed her efforts to address the problem. She stated her boyfriend stayed over one night a week.

7

In a decision placed on the record, the judge found plaintiff had not established a "substantial change in circumstances," and, accordingly, he would not order a change in the children's residence. The judge explained: "what I'm always focused in on is (a) how are kids doing in school and (b) what are their home life dispositions? So, if there are factors going on in either person's house that may not be things that the children are gravitating towards, I would change it." The judge found "[t]here's nothing wrong" with defendant's mother living with defendant and the children and so he was "inclined to keep it as is for now." He indicated, however, he did not "want a situation where . . . a grandparent is doing more than they ought to be doing" and that "if things were to develop in the future, . . . I wouldn't hesitate to look at it." The judge noted lice "can happen in the best and cleanest of homes," cautioned "it can't keep happening," and encouraged the parties to work with the children's school officials. Referencing defendant's one night a week with her boyfriend, the judge suggested defendant "dial that back." The judge also stated he would "look at the child support number."

A week later, the judge entered an order denying without prejudice the aspect of plaintiff's cross-motion seeking to change the residential custody of the children and the aspect of defendant's motion to change the drop-off location.

8

He noted the parties had agreed to change the parenting-time schedule such that defendant would have one weekend with the children each month and the parties would follow a court-approved alternating holiday schedule. He ordered plaintiff to pay defendant $131 weekly in child support.

On March 13, 2023, plaintiff moved for reconsideration of the custody, parenting-time, and child-support provisions of the February 21, 2023 order and for "a plenary hearing, to be [preceded] by a period of discovery." In support of the motion, plaintiff submitted a certification in which he asserted changed circumstances had negatively impacted the children and that having the children primarily reside with him was in their best interests. He identified as "substantial change[s] in circumstance" his "relocation to Pennsylvania under the anticipation that [the children] were coming with" him and defendant's "unexpected change of heart towards moving" and decision "to keep [the children] under her primary care." He contended "[t]he current parenting plan where the children primarily live[] with [d]efendant and s[ee] me on weekends, only came to fruition as a temporary arrangement until they could all move to Scotrun with me." He complained about the children having lice, one child throwing up and having a rash, and the other child having strep throat. He asserted the children were "not doing well" in school, were "falling behind on

their grades," and would have a "drastically improved" quality of education if they lived with him in Pennsylvania. He expressed "concerns regarding [d]efendant's stability as the primary caretaker." He attached photographs of the rash and lice but did not submit any school records or other documentation supporting his claims.

Defendant opposed the motion and cross-moved for an order prohibiting plaintiff from discussing the litigation with the children or disparaging defendant in front of them and for a counsel-fee award. In a certification, she contended she had been the parent of primary residence since the parties entered into the January 10, 2019 consent order. She argued plaintiff had not shown a significant change in circumstances warranting a change in custody or a plenary hearing and had not demonstrated the court overlooked material evidence or otherwise erred. Defendant denied plaintiff had relocated to Pennsylvania based on an agreement they had had. According to defendant, plaintiff was unemployed and the house in which he had resided was subject to a foreclosure action, so he decided to relocate to a family home in Pennsylvania. She disputed his allegations regarding her care for the children and her mental health.

After hearing argument, the judge denied plaintiff's motion on the record, finding plaintiff had not met the standard for reconsideration and had not

demonstrated "a permanent and significant change of circumstances" or a problem with defendant's parenting of the children that warranted a change in custody. On May 18, 2023, the judge entered an order denying plaintiff's motion, granting defendant's cross-motion for "non-discussion" of the case and non-disparagement but applying those conditions to both parties, and denying defendant's fee application.

On appeal, plaintiff argues the judge erred in failing to find he had made a prima facie showing of changed circumstances, in deciding the matter based on conflicting factual allegations in the parties' certifications, and in not making appropriate findings of fact and conclusions of law pursuant to Rule 1:7-4. We disagree and affirm.

II.

Our review of a Family Part judge's findings is limited. "[W]e 'review [a] Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's special jurisdiction and expertise in family matters.'" S.B.B. v. L.B.B., 476 N.J. Super. 575, 594 (App. Div. 2023) (quoting Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016)), certif. denied, 256 N.J. 434 (2024). We also review a trial court's order on a reconsideration motion under an abuse-of-discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567,

11

582 (2021). We review de novo questions of law, such as the interpretation and construction of a contract. Amzler v. Amzler, 463 N.J. Super. 187, 197 (2020); see also Steele v. Steele, 467 N.J. Super. 414, 440 (App. Div. 2021).

Settlement of family disputes is "encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016). "'[S]trong public policy favor[s] stability of arrangements' in [family] matters." Konzelman v. Konzelman, 158 N.J. 185, 193 (1999) (quoting Smith v. Smith, 72 N.J. 350, 360 (1977)); see also Quinn, 225 N.J. at 44. "[F]air and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Quinn, 225 N.J. at 44-45 (quoting Smith, 72 N.J. at 358). "The prominence and weight we accord such arrangements reflect the importance attached to individual autonomy and freedom, enabling parties to order their personal lives consistently with their post-marital responsibilities." Konzelman, 158 N.J. at 193. It is not the role of the court "to rewrite or revise an agreement when the intent of the parties is clear." Quinn, 225 N.J. at 45.

"Where there is already a judgment or an agreement affecting custody in place, it is presumed it 'embodies a best interests determination' and should be modified only where there is a 'showing [of] changed circumstances which would affect the welfare of the children.'" A.J. v. R.J., 461 N.J. Super. 173, 182

12

(App. Div. 2019) (quoting Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993)); see also Slawinski v. Nicholas, 448 N.J. Super. 25, 33 (App. Div. 2016) ("Specifically, with respect to agreements between parents regarding custody or parenting time, '[a] party seeking modification . . . must meet the burden of showing changed circumstances and that the agreement is now not in the best interests of a child'" (quoting Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App. Div. 2003))). A party seeking to alter a child-custody agreement and to permanently relocate a child "is required to demonstrate changed circumstances to justify [the agreement's] modification" and "that there is 'cause' for an order authorizing such relocation." Bisbing v. Bisbing, 230 N.J. 309, 337-38 (2017).

When deciding whether a change in circumstances occurred, a judge examines the parties' current situation and the situation that existed when they entered the agreement at issue. Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990). "A party seeking to modify custody must demonstrate changed circumstances that affect the welfare of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). "A plenary hearing is required when the submissions show there is a genuine and substantial factual dispute regarding

the welfare of the children, and the trial judge determines that a plenary hearing is necessary to resolve the factual dispute." Ibid.

Plaintiff's change-in-circumstances argument is premised on defendant's decision not to join him in Pennsylvania. The problem with the argument is defendant had made that decision before the parties entered the July 29, 2022 agreement. When the parties mutually determined in that agreement the "children [would] continue to reside with mother and remain in the same school," plaintiff knew their dating relationship had ended and that defendant and the children were staying in New Jersey and living with defendant's mother. Those facts are undisputed.

Plaintiff argues on appeal that another change in circumstances was that the children were "suffering in [defendant's] care." The judge considered plaintiff's arguments regarding defendant's care for the children and concluded they did not warrant a change in custody. We perceive no abuse of discretion in that determination. And plaintiff failed to demonstrate a "genuine and substantial factual dispute" that merited a plenary hearing. Hand, 391 N.J. Super. at 105.

The parties agreed the children had had a bout of lice and discussed on the record their efforts to address it. Plaintiff complained about occasions when a

14

child had a rash or strep throat or was vomiting. Those limited instances of common childhood ailments don't rise to the level of requiring a change of custody. Plaintiff's bald assertion that the children's school performance had declined wasn't supported by even a single report card. Plaintiff did not demonstrate how mental-health treatment defendant had received in 2021 or an argument defendant and her mother had had "a couple years back" supported in 2023 a change in the parties' 2022 custody agreement. In the unsworn document attached to his initial motion, plaintiff suggested with no evidential support or explanation that bruises on the children were caused by their grandmother. But given the opportunity to testify under oath at the hearing or in his certification in support of his reconsideration motion, plaintiff said nothing about the bruises and complained only about adjustments the children had to make in living with their grandmother – a housing arrangement plaintiff knew about when he agreed in the July 29, 2022 agreement the children would continue to live with their mother. On that record, we see no abuse of discretion in the Family Part judge's denials of plaintiffs' motions.

To the extent we have not otherwise commented on them, we have duly considered plaintiff's other arguments and conclude they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16