**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2539-21

CHERYL FIORE,

     Plaintiff-Respondent,

v.

RAYMOND FIORE,

     Defendant-Appellant.

_____

Submitted March 20, 2024 – Decided April 16, 2024

Before Judges Firko and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-1225-17.

August J. Landi, Jr., attorney for appellant.

Cheryl Fiore, respondent pro se.

PER CURIAM

In this post-judgment matrimonial matter, defendant Raymond Fiore appeals from the February 14, March 3, and March 16, 2022 Family Part orders

granting plaintiff Cheryl Fiore's motion to recalculate child support following termination of her term alimony and awarding her counsel fees in the amount of $2,380. The judge denied defendant's cross-motion to mediate the parties' issues based on his interpretation of the marital settlement agreement (MSA) incorporated into the judgment of divorce (JOD), request for increased parenting time, for the appointment of an employability expert to evaluate plaintiff, and for counsel fees.

Following our review of the record and applicable legal principles, we affirm the decisions modifying the child support obligation and denying the relief sought by defendant in his cross-motion. However, we reverse and remand the award of counsel fees because the judge did not address the factors required by Rules 5:3-5(c), 4:42-9, and RPC 1.5(a).

I.

We derive the following facts and procedural history from the record. The parties divorced in 2018 after a nine-year marriage. Three children were born of the marriage: E.F.,[1] born in January 2012, M.F., born in November 2013, and C.F., born in August 2015. Plaintiff did not work outside the home during the marriage. The MSA provided that the parties shall share joint legal custody of

_____

[1] We use initials to protect the confidentiality of the minor children.

A-2539-21

the children, with plaintiff being designated as the parent of primary residence and defendant being designated as the parent of alternate residence.  A consent order for custody and parenting time following Rule 1:40-5(a) mediation was incorporated into the JOD.  Defendant has overnight parenting time on alternating weekends from Friday evenings until Sunday evenings and has parenting time every Tuesday and Thursday for dinner visits.

Pursuant to paragraph 5.1 of the MSA, defendant agreed to pay term alimony to plaintiff in the amount of $501 per week for forty consecutive months.  The alimony amount was based on defendant's average annual gross income of $109,000 and an imputation of income to plaintiff in the amount of $20,000.  The child support was calculated using the New Jersey Child Support Guidelines-Sole Parenting Worksheet (Guidelines or Worksheet).  Defendant's net child support obligation was calculated at $255 per week.  However, the parties agreed to deviate from the Guidelines and defendant agreed to pay an additional $35 per week for a total child support obligation of $290 per week.

On July 15, 2021, plaintiff's term alimony ended.  Paragraph 5.6 provided that "[u]pon termination of alimony, [the] parties shall exchange income tax returns and every three years, thereafter."  Plaintiff tried to obtain information directly from defendant regarding his current income in order to recalculate

child support because her alimony had ended. Defendant supplied plaintiff with his 2020 federal income tax return but did not provide his current pay stubs or any other financial information relative to his income. Because defendant was not forthcoming with his financial information, plaintiff retained counsel. Plaintiff did not agree to mediate the child support issue.

On September 13, 2021, plaintiff filed a notice of motion to recalculate child support retroactive to the date her alimony terminated and for an award of counsel fees. Defendant opposed the motion and filed a notice of cross-motion to compel mediation, for increased parenting time, and to order an employability evaluation of plaintiff.

In her moving certification, plaintiff stated that "during the negotiation phase" of the divorce matter, "there was a dispute as to . . . [d]efendant's actual income." She certified that the parties agreed, "for alimony purposes," to base alimony on defendant's average annual income during the marriage "in the gross amount of $109,000 per year." Plaintiff stated that "she was imputed income of $20,000 per year, a level of income that [she] never achieved during [the] marriage, nor in the three . . . years thereafter."

Plaintiff certified that she tried to communicate via email with defendant to obtain information in order to recalculate child support before re-retaining

her attorney, "to no avail." After plaintiff's counsel became involved, plaintiff certified that if defendant had cooperated in producing his financial information, child support could have been recalculated by her attorney, memorialized in a consent order, and judicial intervention and expense could have been avoided. However, plaintiff certified that defendant did not turn over his 2020 income tax returns and three most recent paystubs. Ultimately, plaintiff stated that defendant provided his 2020 federal income tax return directly to her but not his paystubs. Prior to their divorce, plaintiff certified that defendant earned almost $170,000 per year as evidenced on the parties' joint tax return annexed to her original case information statement (CIS).

Plaintiff also certified that she works as a realtor and completed her studies at Brookdale College in August 2021 to become an ultrasound technician, but had not yet taken the necessary board exam. Plaintiff stated she and the three children "are temporarily residing with [her] parents," for economic reasons.

In opposition to plaintiff's motion and in support of his cross-motion, defendant submitted a certification. He certified that paragraph 10.8 of the MSA "specifically requires any dispute post-judgment to be brought to [m]ediation with Lisa E. Halpern, Esq., prior to any [c]ourt application being filed."

Therefore, the case was "not ripe" for judicial determination. Defendant certified that he disagreed with plaintiff's interpretation of paragraph 10.8 to be specifically limited to "only issues of equitable distribution post-judgment" because "all issues of equitable distribution were resolved at the time the divorce was entered" as reflected in the MSA, JOD, and consent order for custody and parenting time. Defendant stated he provided his 2020 tax return, which is all he was required to produce under paragraph 5.6 of the MSA, and he was not required to provide his last three paystubs. Defendant certified that plaintiff "incorrectly views the alimony termination event as an automatic child support increase event," but that is not stated anywhere in the MSA.

Defendant certified that the reason for the "mutual exchange and review" of the parties' respective 2020 tax returns after the termination of alimony "is for purposes of reviewing our respective incomes and changes, if any, as to employment" and then "the discussion, if appropriate, can begin as to a recalculation of child support." According to defendant, plaintiff was "misleading" the court that "a recalculation of child support, and the expectation of an increase, is automatic upon the final alimony payment." Defendant stated he "voluntarily deviated from the [Guidelines]" and paid plaintiff an additional $35 per week over the past three years. Defendant stated plaintiff "resides rent

6

free with her parents," holds "two college degrees," one in "English literature" and the other pertained to a "nursing program as a requirement to enter the program for her [u]ltrasound [t]echnician ([s]onographer) degree."

Defendant added that plaintiff is "a licensed real estate agent," and the real estate market has been "extraordinarily hot." Defendant certified that plaintiff has "ample time" to "sell houses, complete her [u]ltrasound board exams, or work anywhere she wishes," because when the children are not in school, they are home with plaintiff and her parents or with him during his parenting time. Defendant informed the court that his mother agreed to babysit the children to give plaintiff more time to work, but plaintiff did not accept the offer. Defendant's mother submitted a certification attesting to this.

Defendant certified that plaintiff "feigns her inability to earn income," "has no steady source of income," and does not have a "part-time job." Defendant stated that plaintiff could be earning "in the range of $66,000 to upwards of $79,000 per year" as a sonographer based upon New Jersey Department of Labor (NJDOL) and Workforce Development Occupational Wages statistics.

Defendant certified the child support issue should have been mediated before Halpern. He attached an updated CIS, which included his 2020 income

tax return and three last pay stubs. Defendant represented that he is moving from a rental to a four-bedroom single family home he is purchasing, which will result in higher Schedule A expenses.

In his cross-motion, defendant sought to increase his parenting time from Thursday evening through Monday evening on the alternating weekends when he has the children, which equates to "an additional [four] overnights per month based on changed circumstances," notably his new home, where each child will "have their own bedroom[]," and "a yard to play in." Defendant certified his new home is near the children's school, where he coaches their baseball and basketball teams. Defendant stated plaintiff is unreasonable and refuses to give him more parenting time with the children.

Defendant also certified that plaintiff should be ordered to undergo an employability evaluation "to determine her true earning potential" and "salary range" commensurate with her educational and work experience. He also requested counsel fees for having to defend plaintiff's "unmeritorious and premature application."

Plaintiff submitted a reply certification explaining under the terms of the MSA, a return to mediation was only "related to issues dealing with equitable distribution" because this provision was "specifically included" in section 10 of

8

the MSA, which dealt with the distribution of assets and defendant's "retirement accounts." Plaintiff certified that defendant contended "he only had one account," and the parties "had a dispute over certain items of personal property" as stated in the MSA. Plaintiff posited that the MSA does not require the issue of child support to be mediated. She certified that defendant is "manipulating" his income, and historically, he earned "an excessive amount of overtime." Plaintiff stated she took the sonogram boards but did not pass.

On December 13, 2021, the judge conducted oral argument on the motions and reserved decision. On February 14, 2022, the judge entered an order accompanied by a written decision. The judge granted plaintiff's motion to recalculate child support retroactive to the date her motion was filed on the basis of the following changed circumstances: (1) "all of the children attending elementary school full-time"; (2) "[p]laintiff furthering her education to become an [u]ltrasound [t]echnician"; and (3) "termination of the term alimony."

The judge imputed income to plaintiff based on part-time, twenty-hour per week employment at $38.00 per hour, "the 50th percentile for an ultrasound technician," totaling $39,250, plus imputed real estate business income of $3,501, as reflected on plaintiff's 2020 tax return. The judge ruled plaintiff

9

would be imputed income of $43,021.[2]  As to defendant's income, the judge utilized $134,508, representing his year-to-date income extrapolated to December 31, 2021.  Regarding the imputation of part-time income for plaintiff, the judge reasoned:

> While the parties' children are now all attending school full-time, the court notes that the children are still relatively young, with the oldest being ten years of age. Therefore, the court deems it reasonable that plaintiff not yet secure full-time employment that would detract from her duties of caring for the children both before and after school.

The judge agreed with defendant that termination of alimony "is not an automatic child support increase event" under the MSA but found "under these circumstances, . . . it is appropriate to revisit, modify[,] and recalculate child support" given the change of circumstances under the Lepis[3] standard.  The judge noted that plaintiff could work "part-time without incurring any daycare or child care expenses" even if the parties' parents were unavailable to provide child care.  The judge emphasized "[p]laintiff's failure to take the [ultrasound technician] exam should not inure to [her] benefit when calculating child

---

[2]  $39,250 plus $3,501 equals $42,751, not $43,021, a difference of $270.  This miscalculation is not germane to our decision.

[3]  Lepis v. Lepis, 83 N.J. 139, 157 (1980).

support." The judge directed plaintiff's counsel to provide a Worksheet utilizing the income figures ordered by the judge and a supplemental order would issue as to the recalculated child support amount.

The judge determined that plaintiff was entitled to an award of counsel fees in the sum of $2,380, based on defendant's "significantly greater ability to pay [his] own fees and plaintiff's fees" upon reviewing the Rule 5:3-5 factors, without specifying them. The judge found defendant did not act in bad faith and that neither party breached the MSA, rendering paragraph 15.1 of the MSA— "Counsel Fees In The Event Of Breach"—inapplicable.

Addressing defendant's cross-motion, the judge rejected his argument plaintiff's motion was premature and that she breached the MSA by failing to mediate the child support issue. The judge held defendant's "interpretation ignores the prefatory language to the paragraphs in Article 10: 'The parties have agreed as follows with respect to the equitable distribution of their remaining marital assets.'" In addition, the judge highlighted that the mediation section is not listed under "Article 2 General Representations," or under the child support section, and found "[t]here is no paragraph or article in the MSA that states . . . headings and titles are for convenience only and are not for substantive or

interpretive effect or meaning." Therefore, the judge concluded that the mediation requirement "applies only to equitable distribution issues."

Regarding defendant's request for increased parenting time, the judge denied the relief requested without prejudice because defendant did not establish a prima facie case of changed circumstances to warrant modification of the custody and parenting time arrangement. The judge acknowledged the children are three years older than they were when the MSA was entered but standing alone, that did not constitute a substantial change of circumstances. In addition, the judge emphasized that defendant's parenting time schedule was not predicated upon defendant "not having his own home" or that parenting time "would be revisited or increased" when he secured his own home.

The judge denied defendant's request to require plaintiff to undergo an employability evaluation reiterating it was "reasonable" for plaintiff not to be employed full-time in light of the "relatively young" age of the children and the judge's imputation of income to plaintiff. The judge also denied defendant's request for counsel fees.

On March 23, 2022, the judge issued a supplemental order: (1) requiring defendant to provide plaintiff with proof of the children's share of the health insurance premium paid by defendant; (2) directing plaintiff's counsel to provide

12                                                                    A-2539-21

an updated Worksheet to include the health insurance premium cost information; (3) ordering child support arrears to be paid in the amount of $150 per week; and (4) ordering the counsel fees awarded to be paid within fifteen days.

On March 16, 2022, the judge entered a second supplemental order as follows: (1) recalculating defendant's child support obligation at $400 per week retroactive to the date plaintiff filed her motion; (2) continuing child support arrears to be paid at the rate of $150 per week; and (3) ordering the counsel fee award to be paid by the close of business on March 18, 2022. This appeal followed.

On appeal, defendant primarily argues the judge erred by imputing only part-time income to plaintiff and denying his request for increased parenting time because defendant's purchase of a four-bedroom home in the children's school district constituted a substantial change of circumstances. Defendant requests that we exercise original jurisdiction pursuant to Rule 2:10-5, "to bring repose to this litigation." He also argues the judge erred by failing to provide a "lodestar" analysis in granting plaintiff counsel fees.

II.

A.

Our review of a Family Part judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "Because of the family courts' special jurisdiction and expertise in family matters, [we] should accord deference to family court factfinding." Id. at 413. Thus, we will not "engage in an independent assessment of the evidence as if [we] were the court of first instance." N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002) (alteration in original) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

We will "not disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). With regard to questions of law, a trial judge's findings "are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." Z.P.R., 351 N.J. Super. at 434 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

14

"Consequently, when [we] conclude[] there is satisfactory evidentiary support for the trial court's findings, '[our] task is complete and [we] should not disturb the result . . . .'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (fifth alteration in original) (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)). "Deference is appropriately accorded to factfinding; however, the trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

"When reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion." J.B. v. W.B., 215 N.J. 305, 325-26 (2013) (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)). "The trial court's 'award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'" Ibid. (quoting Jacoby, 427 N.J. Super. at 116). We may thus reverse a trial court's decision when it "is 'made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

15

New Jersey courts have long recognized that "[t]he duty of parents to provide for the maintenance of their children is a principle of natural law." Burns v. Edwards, 367 N.J. Super. 29, 39 (App. Div. 2004) (quoting Greenspan v. Slate, 12 N.J. 426, 430 (1953)).  Thus, children "have the right to support from their parents[,]" Connell v. Connell, 313 N.J. Super. 426, 430 (App. Div. 1998), and parents are "obliged to contribute to the basic support needs of an unemancipated child to the extent of the parent's financial ability," Burns, 367 N.J. Super. at 39 (quoting Martinetti v. Hickman, 261 N.J. Super. 508, 513 (App. Div. 1993)).

In establishing or modifying a child support award, courts must rely on articulated guidelines.   R. 5:6A. The guidelines "attempt to simulate the percentage of parental net income that is spent on children in intact families" to award support in an appropriate amount.  Caplan v. Caplan, 182 N.J. 250, 264 (2005).

A trial judge has the discretion to impute income, but only after first finding that a party "is voluntarily unemployed or underemployed." Golian v. Golian, 344 N.J. Super. 337, 341 (App. Div. 2001) (citing Dorfman v. Dorfman, 315 N.J. Super. 511, 516 (App. Div. 1998)); Caplan, 182 N.J. at 268.  Here, the judge determined plaintiff voluntarily chose to stay home and care for her

16

children, and it was appropriate to impute income to her. Plaintiff does not dispute this.

"Imputation of income is a discretionary matter not capable of precise or exact determination but rather requiring a trial judge to realistically appraise capacity to earn and job availability." Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004). On appeal, a trial judge's imputation of a specific amount of income "will not be overturned unless the underlying findings are inconsistent with or unsupported by competent evidence." Id. at 474-75 (citations omitted). There are no bright-line rules that govern the imputation of income. See id. at 474; see also Caplan, 182 N.J. at 270 (reviewing the factors the trial court should consider when "determin[ing] the reasonable amount of income to be imputed to that party.").

As previously stated, the MSA imputed plaintiff with $20,000 income but did not specify the basis for the imputation or an occupation. Plaintiff contends she never went to school for nursing, only for training as an ultrasound technician, and she never passed the mandatory exam required to obtain a job in that field. At the time plaintiff filed her motion, she was working as a realtor and had just completed her studies at Brookdale College. Defendant does not dispute the imputation of $38 per hour to plaintiff as an ultrasound technician,

17

but he challenges the judge's decision to impute part-time employment (twenty hours per week) rather than full-time employment (forty hours per week).

Defendant maintains the judge, without a good cause basis or support in the record, reformed the MSA by imputing part-time income to plaintiff because full-time employment was imputed to her in the MSA. Defendant also avers that the judge failed to consider that plaintiff's parents are available to care for the children while she works because they reside together and her parents are retired. In addition, his mother certified she offered to care for the children and assist with their "educational needs."

Appendix IX-A, paragraph twelve, of the Guidelines sets forth the considerations to be analyzed when imputing income to parents. In relevant part,

> The fairness of a child support award resulting from the application of these Guidelines is dependent on the accurate determination of a parent's net income. If the court finds that either parent is, without just cause, voluntarily underemployed or unemployed, it shall impute income to that parent according to the following priorities:
>
> > a. impute income based on potential employment and earning capacity using the parent's work history, occupational qualifications, educational background, and prevailing job opportunities in the region. The court may impute income based on the parent's former income at that person's

A-2539-21

usual or former occupation or the average earnings for that occupation as reported by the [NJDOL];

b. if potential earnings cannot be determined, impute income based on the parent's most recent wage or benefit record (a minimum of two calendar quarters) on file with the NJDOL (note: NJDOL records include wage and benefit income only and, thus, may differ from the parent's actual income); or

c. if a NJDOL wage or benefit record is not available, impute income based on the fulltime employment ([forty] hours) at the prevailing New Jersey minimum wage.

In determining whether income should be imputed to a parent and the amount of such income, the court should consider: (1) what the employment status and earning capacity of that parent would have been if the family had remained intact or would have formed; (2) the reason and intent for the voluntary underemployment or unemployment; (3) the availability of other assets that may be used to pay support; and (4) the ages of any children in the parent's household and child-care alternatives. The determination of imputed income shall not be based on the gender or custodial position of the parent. See N.J.S.A. 2A:34-23(a).

In her decision, the judge properly considered plaintiff's inability to depend on alternatives for childcare, explaining:

19

Because the minor children are currently attending school, [p]laintiff could work part-time without incurring any daycare or childcare expenses, even if neither parties' parents were available to provide child care/daycare at no cost to the parties.

Also, considering imputing income to plaintiff for part-time employment, the judge highlighted:

The [c]ourt does not find that an employability/occupational evaluation is warranted at this juncture. While the parties' children are now all attending school full-time, the court notes that the children are still relatively young, with the oldest being ten years of age. Therefore, the court deems it reasonable that plaintiff not yet secure full-time employment that would detract from her duties of caring for the children both before and after school.

As we underscored in Storey, there are no bright-line rules that govern the imputation of income. Id. at 474; see Caplan, 182 N.J. at 270. Moreover, Appendix IX-A provides the basis for imputation of income in accordance with the party's usual or former occupation. Caplan, 182 N.J. at 265. Here, the record supports the judge's determination that plaintiff is the primary caretaker of the parties' three young children, the oldest being ten.

In addition, plaintiff's completion of her college degree as an ultrasound technician—for which she has taken the Board exam albeit unsuccessfully— serves as a rational basis to impute income to plaintiff as an ultrasound

technician.[4]  The judge also included an imputed amount of income based on potential real estate sales using the previous year's earnings.  The judge's decision was based upon substantial credible evidence in the record, and we discern no abuse of discretion.

B.

A party seeking modification of an existing custody or parenting time order must demonstrate changed circumstances and that the current arrangement under the existing order is no longer in the child's best interests.  Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007); Finamore v. Aronson, 382 N.J. Super. 514, 522-23 (App. Div. 2006).  To satisfy this burden, the moving party must first show "a change of circumstances warranting modification" of the extant custody and parenting time order.  Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015) (quoting R.K. v. F.K., 437 N.J. Super. 58, 63 (App. Div. 2014)).

Defendant argues the judge erred by denying his motion for additional parenting time based solely on a finding he failed to demonstrate a change in circumstances warranting a modification of parenting time and custody.  He

---

[4]  In her appellate letter brief opposing defendant's appeal, plaintiff states she has been working full-time now for over a year and her gross annual salary is $46,800.  Plaintiff did not specify what type of work she does.

contends we should reverse the judge's order and exercise original jurisdiction because his purchase of a four-bedroom home in the children's school district within five miles of where they live and next to his mother who can assist him constitutes a substantial change of circumstances warranting an increase in his parenting time.

Plaintiff counters that defendant is acting in bad faith, requesting to expand his parenting time only now that his child support obligation is increasing. Plaintiff asserts her new job allows her to work from home three days per week with flexibility to stay home if the children are sick. Plaintiff claims defendant's work schedule has not changed since the JOD was entered and that he starts work at 7:00 a.m. in Linden, a forty-five-minute drive from his current residence.

Plaintiff argues defendant would not be home in the morning to get the children ready for school or get them to school, and he would not be home for them at the end of the school day. She further asserts that defendant consistently has to work overtime and during a "shut down," including overnights as needed.

A determination of whether a party moving for modification of a custody or parenting time order has demonstrated a sufficient change in circumstances warranting a plenary hearing necessarily requires that the court consider the

22

circumstances extant when the custody and parenting time orders for which modification is sought were entered. See, e.g., Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990) (explaining assessments of changed circumstances concerning child support involve consideration of the parties' current situations compared "with the circumstances which formed the basis for the last order fixing support obligations"); Donnelly v. Donnelly, 405 N.J. Super. 117, 127-28 (App. Div. 2009) (holding changed circumstances are evaluated based on those existing at the time the prior order was entered).

Applying these principles to the matter before us, we discern no basis in the record to support a reversal of the judge's determination defendant failed to show the requisite substantial change of circumstances requiring a modification of the parenting time order incorporated into the JOD.

Here, the judge noted "[a]lthough the children are three years older" than they were at the time the MSA was entered by the parties, that does not constitute a sufficient change of circumstances. The judge also held that defendant's parenting time was not "predicated" in the MSA on "having his own home or that parenting time would be revisited." The judge was correct in her analysis. In our review, the judge properly identified the appropriate custody and parenting time order incorporated into the MSA and JOD as the benchmark for

determining whether defendant satisfied his burden of demonstrating a substantial change of circumstances.

III.

Finally, defendant argues the judge erred in awarding counsel fees to plaintiff. He asserts the judge did not specifically address Rules 5:3-5(c), 4:42-9, and RPC 1.5(a). The judge acknowledged that defendant "has a significantly greater ability to pay [his] own fees and [p]laintiff's fees than does [p]laintiff to pay her own fees," and the financial circumstances of the parties weighs in favor of defendant paying plaintiff's counsel fees. The judge also found defendant did not act in bad faith and that neither party breached the MSA, thus rendering paragraph 15.1 inapplicable. In her decision, the judge explained she reviewed the certification of plaintiff's counsel and awarded $2,380, "which the court finds is reasonable and appropriate for the legal services rendered on behalf of [p]laintiff in connection with this matter." (Emphasis omitted).

Counsel fee determinations, "rest[] within the sound discretion of the trial judge." Gotlib v. Gotlib, 399 N.J. Super. 295, 314-15 (App. Div. 2008) (quoting Loro v. Colliano, 354 N.J. Super. 212, 227 (App. Div. 2002)). "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J.

Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Generally, "the party requesting the fee award must be in financial need and the party paying the fees must have the financial ability to pay, and if those two factors have been established, the party requesting the fees must have acted in good faith in the litigation." J.E.V. v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012) (citing Guglielmo v. Guglielmo, 253 N.J. Super. 531, 545 (App. Div. 1992)). When both parties have a "sufficient ability to satisfy [their] attorney's fee obligation, and neither . . . proceeded in bad faith," the court may justifiably deny the award of counsel fees. Reese, 430 N.J. Super. at 586. The court also considers the following factors:

> (1) the financial circumstances of the parties;
>
> (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party;
>
> (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial;
>
> (4) the extent of the fees incurred by both parties;
>
> (5) any fees previously awarded;
>
> (6) the amount of fees previously paid to counsel by each party;
>
> (7) the results obtained;

(8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and

(9) any other factor bearing on the fairness of an award.

[R. 5:3-5(c).]

A trial court's failure to consider the appropriate factors, make the required findings, and state its conclusions of law, constitutes a clear abuse of discretion. See Saffos v. Avaya, Inc., 419 N.J. Super. 244, 271 (App. Div. 2011). Ordinarily, the purpose of a counsel fee award in a matrimonial action is to equalize the relative financial resources of the parties. J.E.V., 426 N.J. Super. at 493 (citing Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992)).

"Simple omnibus references to the rules without sufficient findings to justify a counsel fee award makes meaningful review of such an award impossible . . . ." Loro, 354 N.J. Super. at 228. If the court performs its obligation under the statute and rules, and "there is satisfactory evidentiary support for the trial court's findings, 'its task is complete and [a reviewing court] should not disturb the result, even though it . . . might have reached a different conclusion were it the trial tribunal.'" Reese, 430 N.J. Super. at 568 (quoting Beck, 86 N.J. at 496). Conversely, a remand is appropriate if the trial court fails to adequately explain an award or denial of counsel fees. See Giarusso v.

Giarusso, 455 N.J. Super. 42, 54 (App. Div. 2018) (citing <u>Loro</u>, 354 N.J. Super. at 227-28).

Here, the judge awarded counsel fees without considering all relevant factors. In her February 14, 2022 order, the judge simply stated she reviewed the certification of plaintiff's counsel; noted the discrepancies in the parties' incomes; found defendant did not act in bad faith; and concluded that neither party breached the MSA. The judge did not make detailed findings under the <u>Rules</u> 5:3-5(c), 4:42-9, and RPC 1.5(a). Thus, we are constrained to reverse the portion of the order awarding counsel fees and remand for the judge to consider the requisite factors and conduct the appropriate analysis. We have no opinion on the outcome of the counsel fee decision.

We conclude the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part, reversed and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27

A-2539-21